UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CAROLINE COX, as the Special Administrator of the Estate of Charles Jernegan, deceased,<br><br>           Plaintiff,<br><br>v.<br><br>STANLEY GLANZ, Sheriff of Tulsa County, in his personal and official capacities, et al.,<br><br>           Defendants. | Case No. 11-CV-0457-CVE-FHM |

**OPINION AND ORDER**

Now before the Court are: Defendants Stanley Glanz and Board of County Commissioners of Tulsa Countys' [sic] Motion to Dismiss and Brief (Dkt. # 5); and the Special Appearance of Defendants Correctional Healthcare Management of Oklahoma, Inc. ("CHMO"), Dr. Stephen Harnish, M.D., Sara Sampson, Faye Taylor, S. Jeffries, R. Stultz, N. Bynum, R. Mason, L. Ritchie, Dr. M. Clark, M.D., and L. Summers and Motion to Dismiss Plaintiff's Petition and Brief in Support (Dkt. # 9). Defendants Stanley Glanz and the Tulsa County Board of Commissioners (BOCC) argue that they are not liable to plaintiff under the Oklahoma Governmental Tort Claims Act, OKLA. STAT. tit. 51, § 151 et seq. (GTCA) or 42 U.S.C. § 1983. The remaining defendants assert that plaintiff has failed to allege sufficient facts to state a claim against them, and plaintiff's claims should be dismissed under Fed. R. Civ. P. 12(b)(6).

**I.**

Plaintiff alleges that Charles Jernegan was in the custody of the Tulsa County Sheriff's Department (Sheriff's Department) on July 27, 2009, and was held in the Tulsa County Jail. Dkt.

# 2-2, at 4. She alleges that Correctional Healthcare Management of Oklahoma, Inc. (CHMO) is a foreign corporation hired by the Sheriff's Department to provide medical services to inmates at the Tulsa County Jail. Plaintiff claims that Jernegan had been held in the Tulsa County Jail a few months earlier, and had been placed on suicide watch due to "apparent suicidal thoughts and his struggle with paranoid schizophrenia." Id. According to plaintiff, Jernegan was not placed on suicide watch after being taken into custody on July 27, 2009. She alleges that Jernegan's medications were altered by employees of the Sheriff's Department or CHMO, and that this changed Jernegan's disposition and increased his symptoms of depression. Jernegan allegedly requested medical and mental health treatment, but he did not receive any treatment and he was not placed on suicide watch. Id. On July 30, 2009, Jernegan attempted to commit suicide by hanging himself with a bed sheet, and was discovered approximately one hour later. Jernegan was still alive and breathing and he was taken to an emergency room. However, Jernegan did not survive and he passed away at the emergency room. Id.

Plaintiff states that she "properly notified" defendants of her claim under the GTCA before filing this lawsuit. Id. at 5. On April 15, 2011, plaintiff filed this case in Tulsa County District Court, Oklahoma, alleging a negligence claim against all defendants and a claim under 42 U.S.C. § 1983 against Stanley Glanz, Stephen Harnish, M.D., Lawrence Thrombka, M.D., Sara Sampson, S. Jeffries, R. Stultz, N. Bynum. R. Mason, L. Ritchie, M. Clark, M.D., H. Byrd, and L. Summers[1] for deliberate indifference to Jernegan's need for medical or mental health treatment. Id. at 5-6.

---

[1] The Court will refer the Dr. Harnish, Dr. Thrombka, Sampson, Jeffries, Stultz, Bynum, Mason, Ritchie, Dr. Clark, Byrd, and Summers as "the individual defendants" in this Opinion and Order.

2

Defendants removed the case to this Court on the ground that plaintiff's petition raises a federal question. Dkt. # 2, at 2.

**II.**

Glanz and the BOCC assert that the Court lacks jurisdiction over plaintiff's GTCA claim and that this claim should be dismissed under Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction and, as the party seeking to invoke federal jurisdiction, plaintiff bears the burden of proving that jurisdiction is proper. See Southway v. Cent. Bank of Nigeria, 328 F.3d 1267, 1274 (10th Cir. 2003). A court lacking jurisdiction "cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974). Motions to dismiss under Rule 12(b)(1) "generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." Merrill Lynch Bus. Fin. Servs, Inc. v. Nudell, 363 F.3d 1072, 1074 (10th Cir. 2004) (internal citation and quotations omitted). Here, defendants have facially attacked the sufficiency of the complaint's allegations as to the existence of subject matter jurisdiction over plaintiff's GTCA claim. In analyzing such motions to dismiss, the Court must presume all of the allegations contained in the complaint to be true. Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002); Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995). This is the same standard of review applied to motions arising under Fed. R. Civ. P. 12(b)(6). See Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007).

All defendants assert that plaintiff has failed to state a claim upon which relief can be granted, and ask the Court to dismiss plaintiff's claims under Rule 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly, 550 U.S. at 555; Alvarado., 493 F.3d at 1215; Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. Of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

Glanz and the BOCC ask the Court to dismiss plaintiff's GTCA and § 1983 claims under Rule 12(b)(1) and (b)(6). They argue that plaintiff's GTCA claim is untimely and that they are

4

exempt from liability for claims concerning the operation of a prison. Dkt. # 5, at 2-6. The BOCC argues that it has no responsibility to provide medical care to inmates or to supervise or train employees of the Sheriff's Department, and that it is not liable to plaintiff under § 1983. Id. at 6-7. Glanz asserts that plaintiff has not stated a § 1983 claim against him in his official or individual capacities. Id. at 7-10. Plaintiff agrees to the dismissal of her § 1983 claim against the BOCC, but argues that she should be permitted to proceed with her GTCA claim against both defendants and her § 1983 claim against Glanz in his official and individual capacities. See Dkt. # 9, at 14-15 ("[p]laintiff does not object to dismissal of her § 1983 claim as to the BOCC").

### A.

Glanz and the BOCC argue that plaintiff failed to comply with deadlines for filing a notice of tort claim or for filing her lawsuit under the GTCA, because it is not possible for plaintiff's lawsuit to be timely if Jernegan died on June 30, 2009 as stated in the petition. Dkt. # 5, at 2-4. Plaintiff responds that her petition incorrectly states that June 30, 2009 was the date of Jernegan's death and Jernegan actually died on July 30, 2009. Based on a date of July 30, 2009, plaintiff states that she filed a timely notice of her GTCA claim and filed this lawsuit within 180 days of defendants' denial of her claim.[2] Dkt. # 11, at 9. Defendants' motion is treated as a motion to

---

[2] Plaintiff filed a notice of scrivener's error (Dkt. # 10) stating that the petition contains a typographical error, and the petition should have stated that Jernegan died on July 30, 2009. This is consistent with plaintiff's allegation that Jernegan was in the Tulsa County Jail on July 27, 2009, and the Court will use the date of July 30, 2009 to determine if she complied with the notice requirements of the GTCA. However, plaintiff should correct this typographical error if she files an amended pleading.

dismiss for lack of subject matter jurisdiction.³ See Lopez v. City of Tulsa, Oklahoma, 2010 WL 3825395 (N.D. Okla. Sep. 27, 2010) (motion to dismiss for failure to comply with GTCA notice requirements was considered under Rule 12(b)(1)); Wright v. KIPP Reach Academy Charter School, 2011 WL 1752248 (W.D. Okla. May 6, 2011) (motion to dismiss for failure to comply with statutory deadlines for filing notice of claim is treated as a motion to dismiss for lack of subject matter jurisdiction).

The State of Oklahoma has adopted the doctrine of sovereign immunity and "the state, its political subdivisions, and all of their employees acting within the scope of their employment . . . shall be immune from liability for torts." OKLA. STAT. tit. 51, § 152.1. However, the state has waived its sovereign immunity from tort claims in some circumstances if a claimant complies with the GTCA. Id. Before filing a lawsuit, a claimant must give notice of his or her claim to the state or political subdivision within one year of the "loss." Id. at § 156. A claim is deemed denied if the state or political subdivision takes no action on the claim within 90 days, and a claimant must file a lawsuit within 180 days of the denial of his or her claim. Id. at § 157.

Glanz and the BOCC argue that plaintiff's lawsuit could not possibly be timely if the Court assumes that Jernegan died on June 30, 2009, as stated in plaintiff's petition. Based on a date of June 30, 2009 and assuming that plaintiff filed notice of her claim on June 30, 2010, plaintiff's deadline to file her lawsuit would have been March 26, 2011 and plaintiff's lawsuit filed on April 15, 2011 would necessarily be untimely. However, plaintiff claims that Jernegan died on July 30,

---

³ Plaintiff incorrectly states that the Court is prohibited from considering evidence outside of the pleadings when ruling on this aspect of defendants' motion to dismiss. See Dkt. # 11, at 10 n.2. However, defendants limit their jurisdictional challenge to the allegations of the petition and do not ask the Court to review evidence outside of the pleadings when ruling on this issue.

6

2009 and she filed a notice of scrivener's error (Dkt. # 10) to correct this error in her petition. Assuming that plaintiff filed notice of her claim with defendants on July 30, 2010, plaintiff's deadline to file this lawsuit was April 26, 2011 and it is not implausible that plaintiff's lawsuit was timely filed. Plaintiff states that she actually filed notice of her claim on July 20, 2010 and that her claim was deemed denied on October 18, 2010. Dkt. # 11, at 10 n.2. She further states that her deadline to file this lawsuit was April 16, 2011, and she filed the case on April 15, 2011. Id. Defendant does not contest plaintiff's statement that Jernegan actually died on July 30, 2009, or plaintiff's statement concerning her compliance with the statutory deadlines. See Dkt. # 16 (defendants' reply). It was possible for plaintiff to file a timely lawsuit using a starting date of July 30, 2009 to calculate the statutory deadlines, and it appears that she did comply with the notice provisions of the GTCA. Defendants' motion to dismiss is denied as to plaintiff's alleged failure to comply with the notice requirements of the GTCA.

The BOCC and Glanz argue that plaintiff's GTCA claim is barred by a statutory exemption from governmental liability. Under OKLA. STAT. tit. 51, § 155(24), a governmental entity is not liable for the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility . . . ." In Medina v. State, 871 P.2d 1379 (Okla. 1994), the Oklahoma Supreme Court answered a certified question from a federal district court as to whether this exemption applied to a claim alleging improper dispensation of medicine to a prisoner. In Medina, the prison physician prescribed an inmate Enkaide for a congenital heart defect and issued the inmate a weekly supply of medication in a weekly "pill line." Id. at 1381. The inmate took a lethal dose of the medication and died. Id. at 1382. The inmate's family filed a wrongful death claim against the State of Oklahoma and employees of the Oklahoma Department of Corrections under the GTCA. The

7

defendants argued that they were exempt from liability under § 155(24). The plaintiff argued that the exemption applied only to discretionary decisions by employees of a penal institution, but the Oklahoma Supreme Court rejected the plaintiff's proposed interpretation of this exemption. The Oklahoma Supreme Court held that the exemption includes "all activity involved in the performance of a policy," rather than "policy-making or planning level actions or decisions." Id. at 1383. In the context of claims against state correctional employees, "it is obvious that the purpose and intent of [§ 155(24)] is to protect the state and political subdivisions from tort liability for loss resulting from the functions of the officers and employees performed in the operation of a penal institution." Id. In a subsequent case, the Oklahoma Supreme Court clearly held that Medina stands for the broader proposition that the "state is immune from tort liability for loss as allegedly occurring to a prisoner from the provision of medical care." Redding v. State, 882 P.2d 61, 63 (Okla. 1994).

Plaintiff's negligence claim falls within the exemption, and she may not sue Glanz or the BOCC for their alleged failure to provide Jernegan medical or mental health treatment. Plaintiff is not challenging the adequacy of the Tulsa County Jail's procedures or policies but, instead, she is alleging that prison medical staff negligently provided or failed to provide medical and mental health treatment to Jernegan. This type of claim challenges the manner in which prison medical employees provided medical care to Jernegan, and neither the State nor its political subdivisions is subject to tort liability for such claims. See Stafford v. McCurtain County Jail Trust, 2011 WL 2260489, *8 (E.D. Okla. June 7, 2011) ("The provision of medical care to inmates within the [prison] is a function performed within the operation of the correctional facility; consequently, the Trust is exempt from liability under the [GTCA]."); Gaines v. United States Marshal's Serv., 2010 WL 1050185, *2 (E.D. Okla. Mar. 22, 2010) (Muskogee County was immune from state law tort claim

8

for alleged denial of medical care). Plaintiff may be able to pursue a § 1983 claim against Glanz for the alleged denial of medical and mental health treatment to Jernegan, but the State and its political subdivisions have not waived their sovereign immunity for a negligence claim. Thus, plaintiff's negligence claim should be dismissed as to the BOCC and Glanz.

**B.**

Glanz argues that plaintiff has not stated a § 1983 claim against him in his official or individual capacities. Glanz asserts that he can held liable in his official capacity only if he acted pursuant to an unconstitutional policy or custom, and that plaintiff's petition fails to state a claim against him in his official capacity. Dkt. # 5, at 7-8. Glanz also argues that plaintiff has not stated a claim against him in his individual capacity, because he did not personally participate in the conduct giving rise to Jernegan's death and § 1983 liability may not be premised on a respondeat superior theory. Dkt # 5, at 8-9.

Section 1983 provides a cause of action against state actors for violation of a plaintiff's federal rights. Becker v. Kroll, 494 F.3d 904, 914 (10th Cir. 2007). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Anderson v. Suiters, 499 F.3d 1228, 1232-33 (10th Cir. 2007). In the case of a municipal entity, the "under color of state law" element requires that the constitutional deprivation occurred pursuant to official policy or custom. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). A municipal entity may be held liable for an act it has officially sanctioned, or for the actions of an official with final policymaking authority. Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 482-83 (1986); see

9

also City of St. Louis v. Praprotnik, 485 U.S. 112, 127-28 (1988). A claim against a state actor in his official capacity "is essentially another way of pleading an action against the county or municipality" he represents and is considered under the standard applicable to § 1983 claims against municipalities or counties. Porro v. Barnes, 624 F.3d 1322, 1328 (10th Cir. 2010).

Plaintiff also asserts a claim against Glanz in his individual capacity because Glanz is responsible for the medical care provided to inmates in the Tulsa County Jail, and she alleges that all defendants, including Glanz, acted with deliberate indifference to Jernegan's need for medical or mental health treatment. Dkt. # 2-2, at 3, 6. Tenth Circuit precedent is clear that, for the purpose of a § 1983 claim, "a sheriff is responsible for the proper management of the jail in his county and the conduct of his deputies." Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir. 1988). However, "mere negligence is insufficient to establish supervisory liability." Johnson v. Martin, 195 F.3d 1208, 1219 (10th Cir. 1999). To establish a claim of supervisory liability under § 1983, a plaintiff must plead and prove that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." Dodds v. Richardson, 614 F.3d 1185 (10th Cir. 2010). In Dodds, the Tenth Circuit cited the Supreme Court's decision in Ashcroft v. Iqbal, 129 S. Ct. 1937 (10th Cir. 2009), and explained that a plaintiff must allege that the defendant's "individual actions cause a constitutional deprivation." Id. at 1200. Although the Tenth Circuit did not expressly abrogate any of its precedent on supervisory liability, it recognized that Iqbal "may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit . . . ." Id.

Plaintiff argues that Glanz was the final policymaker for the Tulsa County Jail and that he is responsible for the medical care provided to inmates. Dkt. # 11, at 15. She claims that Glanz, in his official capacity, promulgated or maintained unconstitutional policies concerning the provision of medical and mental health treatment to inmates. Id. at 15-16. While plaintiff's petition does allege that Glanz was ultimately responsible for the medical care provided to inmates, her petition contains no allegations that Jernegan died as a result of any unconstitutional policy or procedure relied upon by prison medical staff. See Dkt. # 2-2, at 2-7. The Court will not consider vague factual allegations stated only in plaintiff's response as a basis to deny Glanz's motion to dismiss. There is no possibility that plaintiff has stated a claim against Glanz in his official capacity, because she has made no attempt to identify an official policy or custom that caused a deprivation of Jernegan's constitutional rights. At most, plaintiff has alleged that Jernegan requested medical or mental health treatment and his requests were ignored, even though Jernegan was allegedly placed on suicide watch during a prior term of detention in the Tulsa County Jail. Dkt. # 2-2, at 6. These allegations do not give rise to an inference that an unconstitutional policy or custom deprived Jernegan of a constitutional right, and plaintiff's § 1983 claim against Glanz in his official capacity should be dismissed. The Court will grant plaintiff leave to file an amended complaint realleging her § 1983 claim against Glanz in his official capacity <u>if</u> she can identify a unconstitutional policy or custom that caused Jernegan's death.

Glanz also requests the dismissal of plaintiff's § 1983 claim against him in his individual capacity. Dkt. # 5, at 8. Plaintiff states that she is "not making a claim against Glanz as a supervisor based on *respondeat superior*; rather, her claim arises from the individual acts of Glanz himself in promulgating and affirmatively approving policies which created the risk of constitutional injury .

11

. . ." Dkt. # 11, at 18. However, plaintiff's petition contains no allegations that Glanz promulgated an unconstitutional policy and she has not alleged any facts giving rise to such an inference. The petition does not provide any factual allegations concerning Glanz's role in the alleged failure to provide Jernegan medical or mental health treatment, and she has not stated a plausible claim that Glanz committed a "deliberate, intentional act" with the intention of depriving Jernegan of his constitutional rights. Porro v. Barnes, 624 F.3d 1322, 1328 (10th Cir. 2010). Instead, plaintiff is attempting to hold Glanz strictly liable for the actions of his subordinates, but Glanz is not liable merely because Jernegan suffered an injury and Glanz's subordinates allegedly caused the injury through deliberate indifference to Jernegan's need for medical or mental health treatment. Plaintiff's § 1983 claim against Glanz in his individual capacity should be dismissed, but plaintiff will be granted leave to file an amended complaint realleging this claim.

**IV.**

Defendants CHMO and the remaining individual defendants seek dismissal of plaintiff's negligence and § 1983 claims, because plaintiff has not made specific factual allegations as to each defendant and they have not been given adequate notice of plaintiff's claims against them. Plaintiff responds that general pleading is permissible in this instance and the allegations of the petition provide defendants adequate notice of her claims.

Plaintiff's negligence claim against CHMO and the individual defendants should be dismissed as to the individual defendants, because the allegations of plaintiff's petition do not give notice to them of what conduct they engaged in and how their conduct allegedly harmed Jernegan. Plaintiff admits in her response that she generally alleges that each defendant acted negligently because is not possession of sufficient information to determine which of the individual defendants

12

may have denied treatment to Jernegan. Dkt. # 17, at 7-8. Construing the allegations of the complaint in a light most favorable to plaintiff, it is reasonable to infer that CHMO, as the medical provider for the Tulsa County Jail, knew of Jernegan's requests for treatment and failed to take action to prevent Jernegan's death. However, the allegations of the petition are insufficient to state a claim against the 13 individual defendants, because plaintiff has given them no notice of the conduct for which plaintiff is seeking to hold them liable. It is not reasonable to infer that each of the individual defendants engaged in each of the alleged acts or omissions giving rise to plaintiff's negligence claim, and the individual defendants are not collectively liable for the alleged failure of CHMO to provide medical or mental health treatment to Jernegan. Plaintiff may file an amended complaint realleging a negligence claim against the individual defendants <u>if</u> she has sufficient information to identify what alleged acts or omissions are attributable to each defendant.

In the context of plaintiff's § 1983 claim, general allegations of multiple defendants' possible role in an alleged constitutional violation will not suffice to state a claim. The Tenth Circuit has rejected the use of broad allegations against multiple defendants in § 1983 cases, because "it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." <u>Robbins v. Oklahoma</u>, 519 F.3d 1242, 1250 (10th Cir. 2008). The notice required under Rule 8 may vary depending on the type of case, and in the context of a § 1983 claim "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom* . . . ." <u>Id.</u> The Court appreciates that plaintiff's counsel may have limited evidence available before pretrial discovery and that the primary witness, Jernegan, is deceased, but this does not justify a reduced pleading standard for her § 1983 claim against CHMO and the individual defendants. The petition contains no specific factual allegations concerning the conduct

13

of CHMO or any individual defendant, and these defendants do not have fair notice of what conduct they engaged in that allegedly violated Jernegan's constitutional rights or whether they could assert a defense of qualified immunity at an early stage of the litigation. Id. at 1249. Plaintiff's § 1983 claim against CHMO and the individual defendants should be dismissed, but plaintiff may file an amended complaint realleging this claim.[4]

**IT IS THEREFORE ORDERED** that Defendants Stanley Glanz and Board of County Commissioners of Tulsa Countys' [sic] Motion to Dismiss and Brief in Support (Dkt. # 5) is **granted**.

**IT IS FURTHER ORDERED** that the Special Appearance of Defendants Correctional Healthcare Management of Oklahoma, Inc. ("CHMO"), Dr. Stephen Harnish, M.D., Sara Sampson, Faye Taylor, S. Jeffries, R. Stultz, N. Bynum, R. Mason, L. Ritchie, Dr. M. Clark, M.D., and L. Summers and Motion to Dismiss Plaintiff's Petition and Brief (Dkt. # 9) is **granted in part** and **denied in part**: the motion is denied as to dismissal of plaintiff's negligence claim against CHMO, but the motion is granted in all other respects.

---

[4] Although not raised by the parties, there is an important issue as to whether CHMO and the individual defendants are considered "employees" of the state and/or are state actors. Under the GTCA, these defendants may be considered "employees" of the State, even though they may actually be on the payroll of CHMO. The GTCA states that "[f]or the purpose of the [GTCA] . . . licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies" are employees of the state. OKLA. STAT. tit. 51, § 152(7)(b)(7). The law is also clear that CHMO and the individual defendants are state actors for the purpose of plaintiff's § 1983 claim, and CHMO is liable to plaintiff under the standards applicable to municipalities. See Parker v. Gosmanova, 335 Fed. Appx. 791, 794 (10th Cir. July 2, 2009). Assuming that plaintiff can state a claim against CHMO and the individual defendants, she will most likely be unable to bring a negligence claim and a § 1983 claim against these parties, and she should carefully consider these issues if she chooses to file an amended complaint realleging certain claims.

**IT IS FURTHER ORDERED** that plaintiff may file an amended complaint realleging her § 1983 claim against Glanz, realleging § 1983 claims against CHMO and the individual defendants, and realleging her negligence claims against the individual defendants no later **October 13, 2011**.

**IT IS FURTHER ORDERED** that the BOCC is **terminated** as a party defendant.

**DATED** this 6th day of October, 2011.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT