# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CAROLINE COX, as the Special Administrator of the Estate of Charles Jernegan, deceased, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 11-CV-0457-CVE-FHM<br>) |
| STANLEY GLANZ, Sheriff of Tulsa County, in his personal and official capacities, et al., | )<br>)<br>) |
| Defendants. | ) |

## OPINION AND ORDER

Now before the Court is the Motion and Brief to Dismiss Section 1983 Claims against Sheriff Stanley Glanz in his Individual and Official Capacities (Dkt. # 31). Defendant Stanley Glanz argues that plaintiff has failed to state a claim against him, because the first amended complaint contains no allegations that he personally knew of Charles Jernegan's need for mental health treatment before his suicide or that he implemented an unconstitutional policy that caused Jernegan's death. Plaintiff responds that she has identified specific unconstitutional policies promulgated and enforced by Glanz, and that she has stated claims against Glanz under 42 U.S.C. § 1983 in his official and individual capacities.

## I.

Jernegan was in the David L. Moss Criminal Justice Center (Tulsa County Jail) in January 2009, and he completed an intake screening form. On the form, he stated that he had previously attempted to commit suicide and that he was having suicidal thoughts. Dkt. # 23, at 6. He was taken to the infirmary for a mental health evaluation, and two nurses reviewed Jernegan's file. Jernegan

requested another mental health evaluation and he was referred to a psychiatrist, Stephen Harnish, M.D., for an evaluation. Dr. Harnish found that Jernegan suffered from general anxiety disorder with psychosomatic agitation. Id. at 7. Jernegan also advised employees of Correctional Healthcare Management of Oklahoma, Inc. (CHMO), the entity responsible for providing medical care to inmates of the Tulsa County Jail, that he was hearing voices and was suffering from extreme anxiety. Id. Jernegan was released from the custody of the Tulsa County Jail, but the first amended complaint does not specify when this occurred.

Jeregan re-entered the Tulsa County Jail in May 2009 and plaintiff alleges that Jernegan suffered from "serious psychological problems" during that time. Id. Jernegan told Renada Lowen, R.N., that he was a paranoid schizophrenic and Lowen noted this in Jernegan's file. Id. He was released once again from the Tulsa County Jail. Jernegan returned to the Tulsa County Jail on July 27, 2009, and plaintiff alleges that Jernegan advised Faye Taylor, R.N., that he was a paranoid schizophrenic. Id. at 8. Plaintiff also alleges that Taylor failed to document Jernegan's history of suicidal thoughts and a suicide attempt, but it is not clear from the first amended complaint if Jernegan advised Taylor of this history on July 27, 2009, or if plaintiff believes that Taylor had a duty to find this information in Jernegan's file. Id. On July 28, 2009, Jernegan used the Tulsa County Jail's "kiosk" system to send a written request for mental health treatment.[1] Jernegan was not placed on suicide watch, and plaintiff claims that Jernegan's medications were altered by employees of CHMO. Id. On July 30, 2009, Sara Sampson, an employee of CHMO, attempted to

---

[1] Defendant has attached to its motion to dismiss a copy of Jernegan's message. Dkt. # 31, at 26. However, the content of Jernegan's message is not included in the first amended complaint and the message is not attached to the first amended complaint, and the Court will not consider evidence outside the pleadings in ruling on defendant's motion to dismiss.

check on Jernegan at 8:00 a.m but found that he had been moved to another pod. Around 9:30 a.m., Sampson checked on Jernegan in his new pod and found him hanging from the ceiling with a bed sheet wrapped around his neck. Jernegan was taken to a hospital and was pronounced dead on July 31, 2009. Id. at 9.

Plaintiff filed this case in Tulsa County District Court, Oklahoma, and the case was removed to this Court. The defendants filed motions to dismiss (Dkt. ## 5, 9) on the ground that plaintiff's petition failed to state a claim upon which relief could be granted, and the motions to dismiss were granted with leave for plaintiff to file an amended complaint realleging certain claims. See Dkt. # 22 (opinion and order granting defendants' motions to dismiss). As to plaintiff's § 1983 claim against Glanz in his official capacity, the Court found that plaintiff had not identified an official policy or custom adopted by Glanz in his role as Tulsa County Sheriff, and that this claim should be dismissed without prejudice. Id. at 10-11. The Court also found that plaintiff had not stated a claim against Glanz under § 1983 in his individual capacity. Id. at 11-12. Plaintiff filed her first amended complaint (Dkt. # 23) and, inter alia, re-alleged § 1983 claims against Glanz in his official and individual capacities. Plaintiff alleges that Glanz implemented at least four policies showing deliberate indifference to Jernegan's need for mental health treatment:

> 33. First, Defendants Glanz and CHMO failed to promulgate and implement adequate mental health policies responsive to the serious medical needs of the prisoners in their care. . . .
>
> 35. Second, the communication policies and procedures for inmates seeking medical treatment promulgated by [Glanz] and implemented by Defendants are, and for all times relevant were, wholly inadequate to ensure the timely assessment and treatment of inmates with serious medical needs. . . .
>
> 36. Third, CHMO and the Tulsa County Sheriff's Department under the direction of [Glanz] have a pattern and practice of understaffing its medical treatment facility. . . .

3

> 37. Fourth, [Glanz] restricts CHMO to very tight budgetary restrictions, creating substantial risks to inmate safety. . . .

Dkt. # 23, at 10-12. Plaintiff further alleges that Glanz directed CHMO to terminate one of its employees who complained about the quality of mental health treatment provided to inmates. Id. at 12.

## II.

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly, 550 U.S. at 555; Alvarado., 493 F.3d at 1215; Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. Of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

**III.**

Glanz argues that plaintiff has not stated a § 1983 claim against him in his official or individual capacities, because the "empty legal conclusions and collective, non-specific allegations against 'defendants'" do not suggest that Glanz personally had any role in promulgating an unconstitutional policy that led to Jernegan's death. Dkt. # 31, at 6-7. Plaintiff responds Glanz overstates the pleading requirements for a § 1983 claim, and that she has adequately stated a § 1983 claim against Glanz in his official and individual capacities.

Section 1983 provides a claim for relief against state actors for violation of a plaintiff's federal rights. Becker v. Kroll, 494 F.3d 904, 914 (10th Cir. 2007). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Anderson v. Suiters, 499 F.3d 1228, 1232-33 (10th Cir. 2007). In the case of a municipal entity, the "under color of state law" element requires that the constitutional deprivation occurred pursuant to official policy or custom. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). A municipal entity may be held liable for an act it has officially sanctioned, or for the actions of an official with final policymaking authority. Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 482-83 (1986); see also City of St. Louis v. Praprotnik, 485 U.S. 112, 127-28 (1988). A plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998) (quoting Board of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997)). A claim against a state actor in his official capacity

"is essentially another way of pleading an action against the county or municipality" he represents, and is considered under the standard applicable to § 1983 claims against municipalities or counties. Porro v. Barnes, 624 F.3d 1322, 1328 (10th Cir. 2010).

Plaintiff alleges that Glanz violated Jernegan's Eighth Amendment right to be free from cruel and unusual punishment, and that the "requisite degree of culpability" is deliberate indifference. "Deliberate indifference" is defined as knowing and disregarding an excessive risk to an inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 827 (1994); Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). In Wilson v. Seiter, 501 U.S. 294 (1991), the Supreme Court clarified that deliberate indifference has two components: (1) an objective requirement that the pain or deprivation be sufficiently serious; and (2) a subjective requirement that the offending officials act with a sufficiently culpable state of mind. Wilson, 501 U.S. at 298-99. Negligence does not state a claim under § 1983 for deliberate indifference to medical needs. Hicks v. Frey, 992 F.2d 1450, 1455 (6th Cir. 1993). In addition, differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). A delay in medical care constitutes a constitutional violation only where the plaintiff can show that the delay resulted in substantial harm. Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001).

Plaintiff has adequately stated a § 1983 claim against Glanz in his official capacity. Jernegan died while in Glanz's custody, and the alleged denial of medical care resulted in a serious injury. Plaintiff claims that Glanz understaffed the medical treatment facility for inmates and intentionally refused to provide adequate funding for the mental health treatment of inmates. She claims that Glanz learned of a CHMO employee's complaints about the level of staffing and the quality of the

6

mental health treatment provided to inmates, and the employee was fired at the direction of Glanz for voicing these complaints. Dkt. # 23, at 12. Plaintiff also alleges that Glanz's failure to adopt any guidelines for the mental health treatment of inmates or provide an adequate means for inmates to request medical treatment also shows his deliberate indifference to the needs of inmates such as Jernegan. Glanz questions the factual allegations underlying the policies, practices, or customs identified by plaintiff, but the Court may not disregard the well-pleaded allegations of the complaint in ruling on a motion to dismiss. See Dkt. # 31, at 17-21. Glanz also complains that plaintiff uses the term "defendants" when describing the alleged conduct, and that the allegations of the first amended complaint are too vague to give him notice of the claims against him. Id. at 8-9. However, plaintiff has described the alleged conduct of each defendant with sufficient specificity to give Glanz and the other defendants notice of the claims against them, and plaintiff's use of the term "defendants" is appropriate when the first amended complaint is considered as a whole.

Glanz also argues that plaintiff has not stated a claim against him in his individual capacity, because plaintiff has alleged no facts suggesting that Glanz was personally involved in the alleged denial of mental health treatment to Jernegan. However, plaintiff's claim against Glanz in his individual capacity is based on supervisory liability. Tenth Circuit precedent is clear that, for the purpose of a § 1983 claim, "a sheriff is responsible for the proper management of the jail in his county and the conduct of his deputies." Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir. 1988). However, "mere negligence is insufficient to establish supervisory liability." Johnson v. Martin, 195 F.3d 1208, 1219 (10th Cir. 1999). To establish a claim of supervisory liability under § 1983, a plaintiff must plead and prove that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of

constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010). In Dodds, the Tenth Circuit cited the Supreme Court's decision in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and explained that a plaintiff must allege that the defendant's "individual actions cause a constitutional deprivation." 614 F.3d at 1200. Although the Tenth Circuit did not expressly abrogate any of its precedent on supervisory liability, it recognized that Iqbal "may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit . . . ." Id.

Plaintiff has cured the pleading defect identified in the prior opinion and order (Dkt. #22), and she has adequately alleged that Glanz acted with the requisite state of mind and that his individual actions caused a deprivation of Jernegan's constitutional rights. Plaintiff alleges that Glanz understaffed and underfunded the prison medical facility, and that Glanz's actions were the result of an official policy or practice. She also claims that Glanz failed to adopt guidelines for mental health treatment of inmates and that he provided an inadequate method for inmates to request medical or mental health treatment. Accepting the allegations of the first amended complaint as true, Glanz's actions may not have directly caused Jernegan's suicide, but the alleged policies could show deliberate indifference to Jernegan's need for mental health treatment. Plaintiff also alleges that Glanz was personally aware that inmates were being denied medical and mental health treatment, and that he punished a CHMO employee who complained about the quality of mental health care at the Tulsa County Jail. This satisfies the Dobbs pleading requirements to identify an official policy and to allege that the state actor's individual actions caused a deprivation of a plaintiff's constitutional rights. At this stage of the case, plaintiff has adequately stated a § 1983 claim against Glanz in his individual capacity, and Glanz's motion to dismiss should be denied.

8

**IT IS THEREFORE ORDERED** that the Motion and Brief to Dismiss Section 1983 Claims against Sheriff Stanley Glanz in his Individual and Official Capacities (Dkt. # 31) is **denied**.

**DATED** this 22nd day of December, 2011.

*/s/ Claire V. Eagan*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT