# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) CAROLYN COX, as the Special Administrator<br>of the Estate of Charles Jernegan, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>(1) STANLEY GLANZ, SHERIFF OF TULSA<br>COUNTY, in His Individual and Official<br>Capacities;<br>(2) CORRECTIONAL HEALTHCARE<br>MANAGEMENT OF OKLAHOMA, INC.;<br>(3) SARA SAMPSON, MHR-MHP;<br>(4) FAYE TAYLOR, LPN;<br>(5) S. JEFFERIES, LPN;<br>(6) L. RITCHIE, LPN;<br>(7) RENADA LOWEN, RN;<br>(8) CORRECTIONAL HEALTHCARE<br>COMPANIES, INC.; and<br>(9) CORRECTIONAL HEALTHCARE<br>MANAGEMENT, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 11-CV-457-JED-FHM |

## DEFENDANTS CORRECTIONAL HEALTHCARE MANAGEMENT OF OKLAHOMA, INC., CORRECTIONAL HEALTHCARE COMPANIES, INC., CORRECTIONAL HEALTHCARE MANAGEMENT. INC, SARA SAMPSON, AND FAYE TAYLOR'S MOTIONS IN LIMINE

COME NOW Defendants, Correctional Healthcare Management of Oklahoma, Inc., Correctional Healthcare Companies, Inc., Correctional Healthcare Management, Inc., Sara Sampson, and Faye Taylor, and move this Court for an Order instructing Plaintiff, Plaintiff's counsel, Plaintiff's witnesses, or any other party from introducing evidence, making argument, mentioning, referring to, or attempting to otherwise convey to the jury in any manner, directly or indirectly, actually or implicitly any of the following statements or information:

1. **Reference to Motions in Limine**

These Defendants respectfully urge this Court to grant their Motion in Limine prohibiting

all parties and witnesses from making reference to the filing of motions in limine or to any ruling by the Court in response to the motions, as such references are inherently prejudicial in that they suggest or infer that the movant has sought to prohibit proof or that the Court has excluded proof on certain matters.  Likewise, the filing of motions and rulings by this Court are not appropriate evidence in this case.  Fed R. Evid. 401, 402 and 403.

GRANTED: _____

DENIED: _____

MODIFIED: _____

_____

## 2.  Insurance Coverage

Any reference, directly or indirectly, to the fact any of the defendants are, or are not, covered by some form of liability insurance with respect to the incident in question, any reference to its insurer(s) or its personnel, including the use of the words "adjuster", "claim", "agent", or otherwise in any form, or any investigation of the events of this case by the insurer and any reference of any healthcare provider called as an expert witness on behalf of any party making reference to insurance for the reason that such fact is entirely immaterial to any issue in this case, and prohibited by the Federal Rules of Evidence.  Fed. R. Evid. 411.

GRANTED: _____

DENIED: _____

MODIFIED: _____

_____

## 3.  CHC or Jail Policies and Procedures

These Defendants urge this Court to enter an Order prohibiting any witness, party or

attorney from stating in front of the jury that a CHC or jail policy or procedure was somehow negligently or deliberately violated, or that any such violation caused any injury to Charles Jernegan, or the Plaintiff.  Specifically, these Defendants would advise this Court that none of Plaintiff's experts have relied upon CHC or jail policies and procedures in arriving at their opinions.  Indeed, no expert disclosure and no expert witness testimony bears out that a CHC or jail policy and procedure was somehow violated and that any such violation caused any injury to Charles Jernegan, or the Plaintiff.  Therefore, any reference to that or any inference that a CHC or jail policy and procedure is at issue in this case would be improper.  It is not relevant, it would be more prejudicial than probative, and it is unsupportive by expert opinion. Fed. R. Evid. 401, 402 and 403.  Therefore, Defendant respectfully urges this Court to enter an order prohibiting any statements to the contrary.

GRANTED:      _____

DENIED:      _____

MODIFIED:      _____

_____

### 4. Lay Witnesses Testifying as Experts

Mere lay witnesses should not be permitted to testify concerning untrained opinions, which necessarily require significant training and education pursuant to Fed. R. Evid. 701 (2010).  It would be error to permit Plaintiff or any other lay witness to give opinions on any medical, nursing, or mental health issues, such as standards of care, a description of the exact injury, causation of the injury, and a medical or nursing diagnosis, etc.

Clearly, such testimony must come from a qualified expert witness and be based upon a reasonable degree of medical certainty pursuant to Fed. R. Evid. 702.  Plaintiff and other lay

witnesses are not qualified in this regard.  Therefore, the Court should instruct Plaintiff and her counsel not to attempt to present any such evidence to the jury.

GRANTED:   _____

DENIED:   _____

MODIFIED:   _____

_____

### 5.  Testimony With Regard to a Code of Silence

Plaintiff, Plaintiff's witnesses and Plaintiff's counsel must be prohibited from making any reference to any alleged conspiracy/code of silence among healthcare provider, law enforcement officers, or correctional officers.  Any such claim is wholly irrelevant and would cause severe prejudice to the Defendants. Fed. R. Evid. 401-403.  Further, there has been no testimony or evidence to support any such claim by the Plaintiff's witnesses or experts.  Accordingly, Plaintiff has not offered any witnesses with personal knowledge of such actions.  As such, these Defendants respectfully move this Court for an order prohibiting such testimony.

GRANTED:   _____

DENIED:   _____

MODIFIED:   _____

_____

### 6.  References to Attorney Deposition Instructions or Objections

Each and every witness had a right to meet with their attorney prior to providing sworn testimony.  Any information regarding these meeting is confidential pursuant to the attorney-client and work product privileges.  Further, this information has absolutely no relevance to the issues of this case or the witnesses' credibility.  Fed. R. Evid. 401-403. In contrast, these

Defendants would be prejudiced by the jury hearing this information as Plaintiff would imply the witnesses were hiding something rather than exercising their right to counsel. Moreover, any objections made during the course of witnesses' depositions, including any side bars or comments by the attorneys present during the deposition are not relevant and must not be offered as evidence in this case. Thus, these Defendants request this Court for a preliminary ruling preventing Plaintiff, Plaintiff's counsel or anyone else from introducing this type of evidence at trial.

GRANTED: _____

DENIED: _____

MODIFIED: _____

_____

### 7. Discovery Issues and Rulings

As this Court knows, discovery has been extremely contested in this case. These Defendants will not belabor the point, but the attorneys and/or their legal opinions, objections, strategies, etc. should not be the focus of trial.

Rather, these Defendants request a preliminary ruling that prohibits Plaintiff, Plaintiff's counsel, and Plaintiff's witnesses from referring to the manner in which the parties conducted discovery, objections made, the timing of materials or answers produced, or the continuances that have been granted. This type of information has absolutely no relevance to the issues of this case. In contrast, these Defendants would be prejudiced by the jury hearing such information as it would only confuse the real issues to be decided. Fed. R. Evid. 401-403. These Defendants request this Court for a preliminary ruling preventing Plaintiff, Plaintiff's counsel or anyone else from making any statement or introducing any evidence of this type at trial.

GRANTED: _____

DENIED: _____

MODIFIED: _____

_____

**8.  References to Settlement Offers or Negotiation Discussions**

Any reference to any offers of settlement or compromise between all parties regarding this case must be prohibited.  Any reference would be an improper attempt to prove liability or the amount of a claim.  Fed. R. Evid. 408.

GRANTED: _____

DENIED: _____

MODIFIED: _____

_____

**9.  Unrelated or Other Cases Against These Defendants**

It would be a violation of the Federal Rules of Evidence to put evidence of other lawsuits and other conduct of any of the Defendants into this case.  Fed. R. Evid. 404(b).  In this case, the Plaintiff's attorneys have repeatedly attempted to inject information from other irrelevant lawsuits or claims by inmates or employees from the Tulsa County Jail.  Such evidence and information of unrelated claims and lawsuits has no bearing on the disputed issues in this case.  Fed. R. Evid. 401(b).   Additionally, it would be more prejudicial than probative.  Fed. R. Evid. 403. Further, pursuant to Fed. R. Evid. 404, evidence used to show conformity with a particular behavior trait is inadmissible.  Therefore, the only purpose for attempting to introduce evidence of other lawsuits or claims against any Defendant is to inflame the jury on issues which are not related or probative to matters in this case.  Defendant respectfully urges this Court to enter an

order prohibiting the use of any such evidence.

GRANTED: _____

DENIED: _____

MODIFIED: _____

_____

### 10. References to Improper Standards of Care and/or Causation

Any reference to standards such as "possibilities" or "it might have been" for causation or standards of care would be clearly incorrect statements of the law and could unfairly confuse the jury. Instead, if Plaintiff intends to refer to standards, she and her attorneys and witnesses should be required to reference proper standards such as "reasonable degree of medical certainty" or "reasonable medical certainty". Fed. R. Evid. 702 (2010). *See Madrigal, et al. v. Mendoza*, et. al., 639 F.Supp.2d 1026.

GRANTED: _____

DENIED: _____

MODIFIED: _____

_____

### 11. Introduction of Medical, Nursing, or Mental Health Literature Into Evidence

Fed. R. Evid. 803 (18) clearly states that upon the establishment of certain published treatises, periodicals or pamphlets as reliable authority, they may only be read into evidence and not received as exhibits. This exception to the hearsay rule is:

> To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits.

Thus, items when offered as a "reliable authority" may only be read into evidence and cannot be admitted as exhibits.

GRANTED: _____

DENIED: _____

MODIFIED: _____

_____

## 12. Notice of Witnesses to Appear at Trial

These Defendants move this Court to instruct the parties to notify each other in advance of witnesses they intend to call at trial. Defendants request that such notification be given because Plaintiff's counsel has identified numerous witnesses that could potentially be called at trial and the Defendants must be given a reasonable amount of time to prepare for each witness that the Plaintiff intends to present at trial. Requiring the parties to disclose which of their witnesses will actually be called at trial in advance of their testimony will allow all counsel to prepare for those witnesses. Fed. R. Evid. 401-403.

GRANTED: _____

DENIED: _____

MODIFIED: _____

_____

## 13. NCCHC, ICE, DOJ, ACA, and FBI Audits or Reports

Plaintiff has listed and intends to use audits, reports, correspondence, and action plans to and from the National Commission of Correctional Health Care (NCCHC), the Immigration and Customs Enforcement agency, the Department of Justice, the American Correctional Association, and the Federal Bureau of Investigation as evidence of negligence and/or deliberate indifference

on the part of the Defendants.  The Plaintiff throughout the course of discovery has questioned witnesses on portions of these audits, reports, correspondence, and action plans.  None of these reports or audits were undertaken or generated as a result of Mr. Jernegan's death.  Further, there is no information regarding the death of Mr. Jernegan which is contained in these audits or reports.  Accordingly, such reports are irrelevant. Fed. R. Evid. 401-403.  The Court in *Dunn ex rel. Albery v. State Farm Mut. Auto. Ins. Co.*, 264 F.R.D. 266, 271 (2009), held that if a particular type of accreditation (such as NCCHC accreditation) is not required by the state for licensure and is over and beyond such licensing requirements, it is irrelevant to any claims of negligence and is therefore inadmissible.  *Id.*

Many of these reports are based on a survey of the medical records of multiple inmates that were incarcerated at the times of the survey.  There is no evidence that any of the surveys or reports took into account the care Mr. Jernegan received while incarcerated at the Tulsa County Jail.  Moreover, many of the audits and reports Plaintiff's counsel has attempted to use during discovery occurred years after Mr. Jernegan's death and have nothing to do with his care while at the jail.  Accordingly, none of these audits, surveys, or reports contain any first-hand knowledge of the particular inmate cases that were reviewed.  As such, the lack of personal knowledge is fatal to any attempt by Plaintiff to offer any such evidence or testimony.  Fed. R. Evid. 602.

Further, these audits and reports are full of hearsay and hearsay within hearsay and thus should be inadmissible, and the hearsay contained within these audits and reports are not part of any exception under the hearsay rules, Fed R. Evid 803-807.   These audits and reports never resulted in a final judgment from a court of law.  Given the permissive nature and wide scope of such audits and reports, and the fact that they are wholly unrelated to the issues of this trial, the Court should exclude reference to any of these audits or reports as they do not prove a fact of

consequence to this case. Further, these audits and reports never resulted in any of these Defendants being sanctioned or losing accreditation.

If the jury hears words such as "investigation" or "deficiency" it will undoubtedly cause unfair prejudice to these Defendants. Fed. R. Evid. 403. Use of any NCCHC, ICE, DOJ, or FBI audit or report will only serve to confuse and mislead the jury while prejudicing the Defendants. Since these audits and reports have no probative value, the Court should exclude any reference to such under Fed R. Evid 802.

It should also be noted that these audits and reports may contain the protected health information of inmates that are not a party to this case. Plaintiff's attempt to disclose this information in a public trial would amount to the protected health information of these individuals being revealed to the public without any notice or waiver by the particular individual. Such a request should be denied by the Court as a violation of HIPAA and Congress' intent to protect its citizens' personal medical information. The Health Insurance Portability and Accountability Act ("HIPAA") protects confidential patient health information and the U.S. Department of Health and Human Services sets forth specific guidelines for obtaining said information for purposes of litigation. 45 C.F.R.§164.512(e)(1)(ii)(B). When a party files an action for medical negligence, or when their own health is at issue, he or she waives any right to confidentiality with respect to his or her medical records; however, such is not the case for non-parties. *Id.* A party may not obtain the medical records of a non-party unless the non-party gives consent or the court orders the disclosure. 45 C.F.R. §164.512(e)(1). Through the implementation of HIPAA, Congress clearly intended for citizen's medical information to remain confidential, and to disregard such would be undermining Congress' goal and authority. (*See Baldridge v. Shapiro*, 455 U.S. 345, 361 (1982) reasoning that "Congress intended the

confidentiality provisions [of a federal statute] to constitute a privilege within the meaning of the Federal Rules[,]" otherwise "[d]isclosure by way of civil discovery would undermine the very purpose of confidentiality contemplated by Congress."). None of the non-parties' information which would be introduced via these audits and reports have given consent for their confidential medical records to be released. As such, any attempt by the Plaintiff to introduce audits, reports, correspondence, and action plans to and from the NCCHC, ICE, DOJ, or the FBI containing protected health information of non-parties should be disallowed pursuant to HIPAA.

GRANTED:  _____

DENIED:  _____

MODIFIED:  _____

_____

## 14. **Documents, Review, AMS Reports and Testimony of Dr. Howard Roemer**

Plaintiff has also listed and intends to use documents, review information, and testimony of Dr. Howard Roemer regarding his involvement in a contract compliance audit that was performed by Dr. Roemer in 2011 (two years after Mr. Jernegan's Death). Mr. Jernegan's care was not reviewed by Dr. Roemer as part of his review. Accordingly, these documents and reviews have absolutely nothing to do with Mr. Jernegan or his care, and more importantly the issues in this case. Fed R. Evid. 402. Dr. Roemer has no has no personal knowledge of the care provided to any of the inmate files which he reviewed, much less Mr. Jernegan's care. As such, this information is again inadmissible. Fed. R. Evid. 602.

Further, the reports, documents, and correspondence created by Dr. Roemer, as well as his testimony in this case is full of hearsay, and hearsay within hearsay and thus should be inadmissible. Further, the hearsay contained within any of his documents, reports, or

correspondence are not part of any exception under the hearsay rules, Fed R. Evid 803-807. Most specifically, his review was not a regularly conducted event that would allow such to be categorized as an event which takes place in the ordinary course of business or the records of such to be a business record allowing the Hearsay Exception outlined in Fed. R. Evid. 803. *See Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1257 (1984). Specifically, the Court in this case held that "audit reports are based in part on inadmissible hearsay". *Id* at 1255. Further, this Court stated that audit reports are not admissible into evidence due to the "inadmissibility of the audit reports to prove the truth of that which appears therein. *Id.*

Dr. Roemer's review, reports, correspondence, and testimony never resulted in a final judgment from a court of law. Given the permissive nature and wide scope of such audits and reports, and the fact that they are wholly unrelated to the issues of this trial, the Court should exclude reference to any of these audits, reports, review or correspondence as they do not prove a fact of consequence to this case. Further, this documentation and testimony of Dr. Roemer never resulted in any of these Defendants being sanctioned or losing accreditation. Accordingly, these documents should be inadmissible pursuant to Fed. R. Evid. 401, 402.

It should also be noted that much of the documentation and testimony related to Dr. Roemer may contain protected health information of inmates that are not a party to this case. Plaintiff's attempt to disclose this information in a public trial would amount to the protected health information of these individuals being revealed to the public without any notice or waiver by the particular individual. Such a request should be denied by the Court as a violation of HIPAA and Congress' intent to protect its citizens' personal medical information. The Health Insurance Portability and Accountability Act ("HIPAA") protects confidential patient health information and the U.S. Department of Health and Human Services sets forth specific

guidelines   for   obtaining   said   information   for   purposes   of   litigation.   45 C.F.R.§164.512(e)(1)(ii)(B). When a party files an action for medical negligence, or when their own health is at issue, he or she waives any right to confidentiality with respect to his or her medical records; however, such is not the case for non-parties. *Id.* A party may not obtain the medical records of a non-party unless the non-party gives consent or the court orders the disclosure. 45 C.F.R. §164.512(e)(1). Through the implementation of HIPAA, Congress clearly intended for citizen's medical information to remain confidential, and to disregard such would be undermining Congress' goal and authority. (*See Baldridge v. Shapiro*, 455 U.S. 345, 361 (1982) reasoning that "Congress intended the confidentiality provisions [of a federal statute] to constitute a privilege within the meaning of the Federal Rules[,]" otherwise "[d]isclosure by way of civil discovery would undermine the very purpose of confidentiality contemplated by Congress."). None of the non-parties' information which would be introduced via these audits and reports have given consent for their confidential medical records to be released. As such, any attempt by the Plaintiff to introduce the audit, documentation from or testimony of Dr. Roemer containing protected health information of non-parties should be disallowed pursuant to HIPAA.

GRANTED:   _____

DENIED:   _____

MODIFIED:   _____

_____

### 15. Oklahoma Department of Health Survey and Report

Throughout discovery in this case the Plaintiff has attempted to use a report/notice of violation from the Oklahoma Department of Health as evidence of negligence and deliberate

indifference.  Of course, this notice was responded to by the Tulsa County Sheriff's Office and there was not any further action or report taken by the Oklahoma Department of Health after the Sheriff's Office outlined how the jail and the CHM Defendants completely complied with the Oklahoma Jail Standards at all times during Mr. Jernegan's incarceration.   None of the individuals that were involved in conducting the review on behalf of the Department of Health were involved in providing care to Mr. Jernegan.   Rather, these individuals merely reviewed a portion of the medical records which discussed his care.  As such, none of these individuals would possess personal knowledge of the care provided to Mr. Jernegan or the events which lead to his death.  Accordingly, this information is inadmissible.  Fed. R. Evid. 602.

Further, reports and notices from the Department of Health are full of hearsay and hearsay within hearsay and thus should be inadmissible.   The hearsay contained within the Department of Health notice relating to Mr. Jernegan is not part of any exception under the hearsay rules, Fed R. Evid 803-807.  Most specifically, this audit was not a regularly conducted event that would allow such to be categorized as an event which takes place in the ordinary course of business or the records of such to be a business record allowing the hearsay sxception outlined in Fed. R. Evid. 803.  *See Paddack v. Dave Christensen, Inc.,* 745 F.2d 1254, 1257 (1984).   Specifically, the Court in this case held that "audit reports are based in part on inadmissible hearsay".  *Id* at 1255.  Further, this Court stated that audit reports are not admissible into evidence due to the "inadmissibility of the audit reports to prove the truth of that which appears therein. *Id.*

None of the audits or reports from the Department of Health produced in this case have ever resulted in a final judgment from a court of law or any final agency finding.  Further, none of the audits or reports from the Oklahoma Department of Health have ever resulted in any of the

defendants being sanctioned, disciplined or losing licensing by the state.  Given the permissive nature and wide scope of such audits and reports, and the fact that they are unrelated to the issues of this trial, the Court should exclude reference to any of these audits or reports as they do not prove a fact of consequence to this case.  Fed. R. Evid. 401, 402.

GRANTED: _____

DENIED: _____

MODIFIED: _____

_____

### 16. Mortality Reviews

Plaintiff has listed as an exhibit in this case and asserted that she intends to present mortality reviews completed by CHMO in response to the deaths of Mr. Jernegan and other non-party inmates.  On face, these mortality reviews do not have any relevance to the death of Mr. Jernegan or the events that led to his death.  These mortality reviews were done after Mr. Jernegan's death and were done for the purpose of reducing morbidity and mortality in the jail infirmary.  As such, such should be inadmissible pursuant to Fed. R. Evid. 401 and 402.

Further, the mortality reviews, of inmates other than Mr. Jernegan contain protected health information of inmates that are not a party to this case.  Plaintiff's attempt to disclose this information in a public trial would amount to the protected health information of these individuals being revealed to the public without any notice or waiver by the particular individual. Such a request should be denied by the Court as a violation of HIPAA and Congress' intent to protect its citizens' personal medical information. The Health Insurance Portability and Accountability Act ("HIPAA") protects confidential patient health information and the U.S. Department of Health and Human Services sets forth specific guidelines for obtaining said

information for purposes of litigation.  45 C.F.R.§164.512(e)(1)(ii)(B). When a party files an action for medical negligence, or when their own health is at issue, he or she waives any right to confidentiality with respect to his or her medical records; however, such is not the case for non-parties.  *Id.*  A party may not obtain the medical records of a non-party unless the non-party gives consent or the court orders the disclosure. 45 C.F.R.  §164.512(e)(1).   Through the implementation of HIPAA, Congress clearly intended for citizen's medical information to remain confidential, and to disregard such would be undermining Congress' goal and authority. (*See Baldridge v. Shapiro*, 455 U.S. 345, 361 (1982) reasoning that "Congress intended the confidentiality provisions [of a federal statute] to constitute a privilege within the meaning of the Federal Rules[,]" otherwise "[d]isclosure by way of civil discovery would undermine the very purpose of confidentiality contemplated by Congress.").  None of the non-parties' information which would be introduced via these audits and reports have given consent for their confidential medical records to be released.

GRANTED:      _____

DENIED:        _____

MODIFIED:    _____

_____

### 17. **Testimony Regarding Rumors or Information the Individual Has Heard**

Plaintiff's counsel has asked a number of witnesses about information that they heard at the jail or about rumors that were discussed at the jail.  In particular, Plaintiff's counsel in this case has attempted to elicit information from witnesses that the defendants have engaged in falsifying and destroying records.  The witnesses that Plaintiff's counsel has attempted to elicit this information from are all disgruntled ex-employees of the defendants. None of them testified

to any of records relating to Mr. Jernegan being a part of any falsifying or destroying of records. Not to mention, all of the testimony the Plaintiff elicited was utter hearsay and rumors. This is clearly improper pursuant to the Federal Rules of Evidence. By the very definition of "rumor", these witnesses have admitted that they do not have personal knowledge regarding this information. Fed. R. Evid. 602. Further, this testimony would clearly be hearsay pursuant to Fed. R. Evid. 801 and 802 and would not fall under any of the Hearsay exceptions under Fed. R. Evid. 803-807. Additionally, any rumor that Plaintiff's witnesses could testify to would be irrelevant pursuant to Fed. R. Evid. 402. Further, this information would be prejudicial to these Defendants because the defendants would have no way of testing this testimony for its veracity. Fed. R. Evid. 403. Accordingly, these Defendants request that this Court issue an order forbidding any such testimony.

GRANTED: _____

DENIED: _____

MODIFIED: _____

_____

### 18. Criminal Action Against CHMO Healthcare Providers

It is anticipated that Plaintiff may attempt to introduce evidence or suggest that the nurses from CHMO have prior or subsequent criminal convictions, charges or arrests. Under Fed. R. Evid. 402, "Irrelevant evidence is not admissible." Furthermore, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of *unfair prejudice*, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise. Fed. R. Evid. 403. Any such criminal actions had nothing to do with the care provided in this case. Admitting any evidence, or suggestion of such

action, regarding the nurses of CHMO would certainly prejudice the Defendants and mislead the jury.  Therefore, any possible probative value of criminal actions or history against the nurses at CHMO would be heavily outweighed by the unfair prejudice that would result from its admission, and thus, such evidence should be excluded.

GRANTED: _____

DENIED: _____

MODIFIED: _____

_____

### 19. Employment Records of CHMO Healthcare Providers

It is anticipated that Plaintiff may attempt to introduce evidence or documents from the employment files of the CHMO nurses.  Under Fed. R. Evid. 402, "Irrelevant evidence is not admissible."  Furthermore, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of *unfair prejudice*, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise.  Fed. R. Evid. 403. Evidence or records contained within the CHMO healthcare provider's personnel files which is hearsay or which occurred after Mr. Jernegan's death at the jail is irrelevant to this suit and should not be admissible.  None of the documentation contained in any of these employment files contains information related to Mr. Jernegan or the care provided to him and, thus, has nothing to do with the care provided in this case.  Accordingly, any such evidence should be excluded.

GRANTED: _____

DENIED: _____

MODIFIED: _____

---

### 20. Criticisms Not Presented by Expert Testimony

Plaintiff or Plaintiff's counsel should not be allowed to advance criticisms and claims that were not advanced by Plaintiff's expert. It would be error to permit Plaintiff, her counsel or Plaintiff's witnesses to raise issues or to give lay opinions on any medical, nursing, or mental health issue, such as a description of the exact injury, standards of care, causation of the injury, and medical or nursing diagnosis, etc. Clearly, such testimony must come from a qualified expert witness and be based upon a reasonable degree of medical certainty. Plaintiff's expert witnesses have been deposed. Each has stated that they have given their full opinions and criticisms of the care rendered by these Defendants. Any new opinions or changed opinions would be fundamentally unfair to the Defendant at this stage of litigation.

GRANTED: _____

DENIED: _____

MODIFIED: _____

---

### 21. Testimony Regarding Lack or Weakness of Staffing

It is anticipated that Plaintiff will unfoundedly attempt to make representations to the jury that the staffing at Tulsa County Jail by CHMO was lacking, weak or improperly trained. Plaintiff has failed to come forward with any evidence throughout the course of discovery to support these claims. As a result, any such a claim is completely unfounded and there is a total lack of evidence that such is true. It is fundamental that allegations of negligence must be supported by sufficient evidence. To date, there has been no evidence whatsoever to indicate or remotely imply that any of these allegations are true. If there is not competent evidence to

support the result reached by the trier of fact it is vulnerable to being overturned on appeal. It is not enough for Plaintiff to have a theory regarding these allegations. Plaintiff must have some factual evidence to support for such a theory if it is to be introduced to the jury. Any such claim by Plaintiff would be mere speculation and completely unfounded. As such, the Court should prohibit the discussion of any of these allegations.

GRANTED: _____

DENIED: _____

MODIFIED: _____

_____

## 22. **Prior Psychiatric\Mental Health History of Mr. Jernegan**

It is anticipated that Plaintiff will attempt represent to the jury that Mr. Jernegan had a prior history of psychiatric and mental health issues and that he been prescribed psychiatric medications. Plaintiff has failed to come forward with any evidence in this case showing Mr. Jernegan was ever diagnosed with a mental health disorder or that he was ever under treatment by a psychiatrist or mental health professional outside of his incarceration at the Tulsa County Jail. Therefore, any claim that Mr. Jernegan was diagnosed with a mental health disorder, specifically paranoid schizophrenia, is completely unfounded and there is a total lack of evidence to support that claim. It is fundamental that allegations of negligence and deliberate indifference must be supported by sufficient evidence. To date, there has been no evidence whatsoever to indicate or remotely imply that any of these allegations are true. If there is not competent evidence to support the result reached by the trier of fact it is vulnerable to being overturned on appeal. It is not enough for Plaintiff to have a theory regarding these allegations. Plaintiff must have some factual evidence to support for such a theory if it is to be introduced to the jury. Any

such claim by Plaintiff would be mere speculation and completely unfounded. As such, the Court should prohibit the discussion of any of these allegations.

GRANTED: _____

DENIED: _____

MODIFIED: _____

_____

### 23. Employment History of Mr. Jernegan

It is anticipated that Plaintiff will attempt represent to the jury that Mr. Jernegan was gainfully employed prior to his incarceration at the Tulsa County Jail. However, the Plaintiff in this case has not provided any evidence to support her claim that Mr. Jernegan was employed at any time prior to his incarceration at the Tulsa Coutny Jail. The Plaintiff has not produced any pay stubs, bank account information, or tax returns for Mr. Jernegan that would support a claim that he had any income prior to this death. Given Plaintiff's failure to come forward with any evidence to support her claim of lost income, the Plaintiff must not be allowed to testify or elicit testimony from any witness that Mr. Jernegan was in fact employed and earning an income prior to his death.

GRANTED: _____

DENIED: _____

MODIFIED: _____

_____

### 1. Financial Support to Children

It is anticipated that Plaintiff will attempt represent to the jury that Mr. Jernegan was provided financial support to his three children or that he was somehow financiall responsible for

his three children prior to his death.  However, the only evidence in this case is that Mr. Jernegan had relinquished his parental rights to all of his children and that at the time of his death he was not providing any financial support to his children at all.  Without any evidence to support her claim that Mr. Jernegan was supporting his three children or that he even had any responsibility to do so, the Plaintiff must not be allowed to put on evidence, testify, or elicit testimony that Mr. Jernegan provided financial support to any of his children or that he was obligated to do so prior to the time of his death.

GRANTED: _____

DENIED: _____

MODIFIED: _____

_____

These Defendants specifically adopt and incorporate any motions in limine filed by Defendant Stanley Glanz.  Moreover, as the deadline to exchange lists of exhibits has not yet occurred, these Defendants reserve the right to file additional motions in limine upon the final exchange of exhibits.

[continued on the next page]

Respectfully submitted,


*s/ Alexander C. Vosler*

_____

ALEXANDER C. VOSLER, OBA # 19589
JOHNSON HANAN AND VOSLER
Chase Tower, Suite 2750
100 North Broadway
Oklahoma City, Oklahoma 73102
Telephone: (405) 232-6100
Facsimile:   (405) 232-6105
E-Mail: avosler@johnsonhanan.com
ATTORNEYS FOR DEFENDANTS
CORRECTIONAL HEALTHCARE
MANAGEMENT OF OKLAHOMA,
INC.; FAYE TAYLOR,  LPN,
CORRECTIONAL HEALTHCARE
COMPANIES, INC. AND
CORRECTIONAL HEALTHCARE
MANAGEMENT, INC.



*s/ Sean P. Snider*

_____

SEAN P. SNIDER, OBA # 22307
JAMES M. WEBSTER, OBA #22448
JOHNSON HANAN AND VOSLER
Chase Tower, Suite 2750
100 North Broadway
Oklahoma City, Oklahoma 73102
Telephone: (405) 232-6100
Facsimile:   (405) 232-6105
E-Mail: ssnider@johnnsonhanan.com
ATTORNEYS FOR DEFENDANTS
CORRECTIONAL HEALTHCARE
MANAGEMENT OF
OKLAHOMA, INC.; SARA SAMPSON,
CORRECTIONAL HEALTHCARE
 COMPANIES, INC. AND
CORRECTIONAL HEALTHCARE
MANAGEMENT, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of February, 2013, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| Donald E. Smolen | donaldsmolen@ssrok.com |
| Laura M. Lauth | lauralauth@ssrok.com |
| Louis W. Bullock | lbullock@bullock-blakemore.com |
| Patricia W. Bullock | pbullock@bullock-blakemore.com |
| Robert M. Blakemore | bblakemore@bullock-blakemore.com |
| Sean E. Manning | smanning@shookjohnson.com |
| Meredith Baker | mbaker@tsco.com |
| Dan Smolen | danielsmolen@ssrok.com |
| Clark Brewster | cbrewster@brewsterlaw.com |
| Corbin Brewster | ccbrewster@brewsterlaw.com |
| Guy Fortney | gfortney@brewsterlaw.com |

*s/ Sean P. Snider*

_____

Sean P. Snider