IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

CAROLYN COX,                )
                            )
        Plaintiff,        )
                            )   Case No. 11-CV-457-JED-FHM
v.                          )
                            )
STANLEY GLANZ,              )
                            )
        Defendant.        )

## OPINION AND ORDER

Before the Court is plaintiff's "Motion in Limine to Preclude Expert Testimony of [defendant's expert] witness, Charles G. Fisher" (Doc. 190). Sheriff Glanz filed a Response (Doc. 311), which adopted the previously settled defendants' Response (Doc. 212).

**I.    Standards Governing Expert Testimony**

Rule 702 of the Federal Rules of Civil Procedure applies to the admissibility of expert testimony. The rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 597 (1993), the Supreme Court held that district courts act in a "gatekeeping role" to ensure that scientific expert testimony is relevant and reliable. An expert's opinion must be based on "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. The applicability

of *Daubert* was later expanded to apply to the opinions of all experts, not just scientific experts. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) ("We conclude that *Daubert's* general holding -- setting forth the trial judge's general 'gatekeeping' obligation -- applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge.").

The Supreme Court set forth several non-exclusive factors that a court may consider in making its determination whether proposed expert testimony will assist the trier of fact: (1) "whether it can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) the "known or potential rate of error" of a technique; and (4) whether the theory or technique has "general acceptance," which is an important consideration because "'a known technique which has been able to attract only minimal support within the community' may properly be viewed with skepticism." *See Daubert*, 509 U.S. at 593-94. The inquiry into these factors is "a flexible one," and the focus is "on principles and methodologies, not on the conclusions that they generate." *Id.* at 593

In *Bitler v. A.O. Smith Corp.,* 400 F.3d 1227 (10th Cir. 2005), the Tenth Circuit discussed the role of district courts when considering a *Daubert* challenge. The court should make a preliminary finding whether the expert is qualified, by determining "if the expert's proffered testimony . . . has 'a reliable basis in the knowledge and experience of his [or her] discipline.'" 400 F.3d at 1232-33 (quoting *Daubert*, 509 U.S. at 592). The proponent of expert testimony must establish that the expert used reliable methods to reach his conclusion and that the expert's opinion is based on a relevant factual basis. *See id.* at 1233. "[A] trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions." *Id.* However, an impermissible analytical gap in an

expert's methodology can be a sufficient basis to exclude expert testimony under *Daubert*. *See id.*; *see also Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 886 (10th Cir. 2005). "Neither *Daubert* nor the Federal Rules of Evidence 'require[ ] a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.'" *Norris*, 397 F.3d at 886 (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

## II.   Analysis of Mr. Fisher's Opinions

Plaintiff asserts that Mr. Fisher should be excluded from providing expert opinions because he is not qualified to render the opinions he proposes to provide, his opinions are unreliable and will not be of assistance to the jury, and his opinions merely state legal conclusions and would tell the jury what result to reach. Defendant responds that Mr. Fisher "is testifying as a corrections expert, a field in which he is highly qualified," and he is qualified "to render expert testimony on whether [defendant's] conduct was proper and in compliance with jail policies and procedures." (Doc. 190-1 at 2-3). Defendant also asserts that, "although Mr. Fisher's proposed testimony does not lend itself to application of the *Daubert* factors," such testimony is reliable because he has 20 years of "experience in the field of jail administration" and he reviewed case materials, medical records, policies, and Jail records. (*Id.* at 4).

In his Rule 26(a)(2) report, Mr. Fisher summarizes his expertise to include that he: authored six articles in 2001 for *Corrections Professional*; developed standards for inspections of Tennessee detention facilities; managed the Tennessee inspection and officer training programs for jails from 1982 to 1998; has been appointed an expert in jail litigation; has served as a Special Master in federal courts; and has served as an expert witness in numerous cases. (Doc. 190-1). He has a Master's Degree in Education. (*Id.*). He reviewed the plaintiff's Second Amended Complaint, medical records relating to Mr. Jernegan, policies of the health care

provider at the Jail, Sheriff's shift logs, booking records and policies, reports of plaintiff's experts, and the investigation report of the state's Jail Inspection Division. (*Id.*).

Mr. Fisher's report contains a section titled "Statement of Opinions." (*Id.* at 1-3). The vast majority of statements in that section merely recite certain facts from Jail records relating to Mr. Jernegan. (*See id.* at 2-3). The following are the only statements in the report which are arguably in the nature of an opinion:

> **There was no deliberate indifference in the way Mr. Jernegan's case was handled by either the corrections officers or the medical staff.** The term deliberate indifference implies that the jail knew of the likelihood that Mr. Jernegan would harm himself and callously ignored that risk. Both corrections staff and medical staff acted properly. . . .
>
> As I stated at the beginning of this section, deliberate indifference, as I understand it, requires that medical staff or security staff have knowledge of a high probability or certainty that an inmate will harm himself or others and simply ignore that risk. There is no evidence that was the case in this instance. **It is my opinion that both corrections personnel and medical staff acted properly and that there was no deliberate indifference in this case.**
>
> Mr. Jernegan was **never** denied access to medical services. His requests were not ignored. He had every opportunity to reach out to both medical and security staff and did not do so.

(*Id.* at 2-3) (emphasis in original).

Plaintiff argues that Mr. Fisher is not qualified to render opinions regarding the adequacy of medical or mental health care. Mr. Fisher does not purport to have any training, education or experience relating to medical or mental health care. (*See* Doc. 190-1). Defendant admits as much (*see* Doc. 212 at 2), but argues that Fisher is qualified, as a corrections expert, to "render expert testimony on whether [defendant's] conduct was proper and in compliance with jail policies and procedures." (*Id.* at 2-3). However, none of his opinions relating to Mr. Jernegan's July 2009 incarceration refer to any particular policies or procedures and, other than generically

listing "policies" in a list of items that he reviewed (*id.* at 1, ¶¶ 5, 6), his report does not identify which policies and procedures he alleges were followed or were material.

Mr. Fisher also does not explain how he arrived at his conclusions, other than that he reviewed documents and determined the staff did nothing wrong. There is no summary of any principles or methods he applied, and his report does not contain any explanation of how his experience applies to arrive at his conclusions. For example, he does not identify any standards in the correctional setting which inform his view that "corrections personnel and medical staff acted properly" with respect to Mr. Jernegan, does not indicate what specific experience he has that would be relevant to Jail practices with mentally ill inmates or the adequacy of medical care or mental health care systems in the Jail setting, and does not set forth any particular knowledge, experience or training that makes him qualified to draw that conclusion under the facts presented in this case. (*See id*.). To the extent that he is proposing to testify that Jail staff "acted properly" with respect to Mr. Jernegan, Mr. Fisher does not explain the process by which he relates his experience to the facts at hand in order to reach that opinion. In short, defendant has not shown that Mr. Fisher's testimony would be "the product of reliable principles and methods" or that he "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(c), (d). There is no "principle or method" identified at all.

Moreover, to the extent that Mr. Fisher would testify regarding the adequacy of the medical / mental health care at the Jail or opine that the medical records establish that Mr. Jernegan was properly treated at the Jail, Mr. Fisher has no medical training and no other qualifications that would provide a suitable basis for rendering a reliable opinion on medical or other matters outside of his field of expertise. He does not have the qualification to offer expert testimony regarding whether the medical staff "acted properly," and he is in no better position

than the jury to review the medical records and arrive at a conclusion regarding the conduct of the Jail's medical staff. Such opinions on the propriety of medical care are unreliable. *See, e.g., Bruner-McMahon v. Sedgwick County Bd. of Comm'rs*, 10-CV-1064-KHV, 2012 WL 33837 (D. Kan. Jan. 6, 2012) (corrections expert in a jail death case under § 1983 was not qualified to render any reliable opinion regarding whether medical care was denied).

Defendant argues that, because Mr. Fisher's testimony is not of the type that lends itself to the typical *Daubert* reliability analysis, his "personal knowledge, experience, facts, and data" satisfy the reliability prong. (*See* Doc. 212 at 4). However, "[i]f the witness is relying solely or primarily on experience, then the witness *must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts*." Fed. R. Evid. 702 advisory committee's note (emphasis added); *see also Dean v. Thermwood Corp.*, 10-CV-433-CVE-PJC, 2012 WL 90442 (N.D. Okla. Jan. 11, 2012) ("An expert cannot simply offer a conclusory opinion that is not tied to specific facts and an identifiable methodology. . . . Where an expert bases his opinions on his experience rather than scientific testing, he still must explain how the experience informs his opinions."). Defendant and Mr. Fisher have not provided any such explanation.

Mr. Fisher's proposed testimony would also purport to define for the jury what "deliberate indifference" is. (*See* Doc. 190-1 at 2 ["The term deliberate indifference implies that the jail knew of the likelihood that Mr. Jernegan would harm himself and callously ignored that risk."]; *id.* at 3 ["deliberate indifference, as I understand it, requires that medical staff or security staff have knowledge of a high probability or certainty that an inmate will harm himself or others and simply ignore that risk."]). The Court will instruct the jury on the meaning of deliberate indifference in the context of plaintiff's claim under 42 U.S.C. § 1983, and it is thus

inappropriate for Mr. Fisher to opine on the definition of deliberate indifference. Mr. Fisher also proposes to apply his "understand[ing]" of the meaning of deliberate indifference to arrive at a conclusion that "there was no deliberate indifference" in this case. (Doc. 190-1 at 1, 3). These conclusions regarding deliberate indifference are not appropriate for expert testimony because they are conclusions as to an ultimate issue of law.

In *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988), the Tenth Circuit concluded that an expert should not be permitted to give an opinion on an ultimate issue of law. 853 F.2d at 807-09. In arriving at that conclusion, the court noted that "a number of federal circuits have held that an expert witness may not give an opinion on ultimate issues of law," and stated:

> The courts in these decisions draw a clear line between permissible testimony on issues of fact and testimony that articulates the ultimate principles of law governing the deliberations of the jury. These courts have decried the latter kind of testimony as directing a verdict, rather than assisting the jury's understanding and weighing of the evidence. In keeping with these decisions, we conclude the expert in this case was improperly allowed to instruct the jury on how it should decide the case. The expert's testimony painstakingly developed over an entire day the conclusion that defendants violated plaintiffs' constitutional rights. . . . By permitting the jury to hear this array of legal conclusions touching upon nearly every element of the plaintiffs' burden of proof under § 1983, the trial court allowed the expert to supplant both the court's duty to set forth the law and the jury's ability to apply this law to the evidence. . . . In no instance can a witness be permitted to define the law of the case.

853 F.2d at 808-10.

Courts have applied the general principle of excluding expert testimony on ultimate issues of law specifically to proffered expert testimony on "deliberate indifference." One federal court recently excluded Mr. Fisher's proposed opinions regarding whether conduct constituted deliberate indifference. *See Rose v. Sevier County, Tennessee*, 3:08-cv-25, 2012 WL 6140991 (E.D. Tenn. Dec. 11, 2012) ("the court finds that Mr. Fisher may not testify as to whether in his opinion the defendants' alleged conduct constituted deliberate indifference toward the plaintiff").

7

In *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994), *cert. denied*, 513 U.S. 1111 (1995), the district court admitted testimony of the plaintiff's expert witness that the defendant was "gross[ly] negligent" in training officers and that such gross negligence was comparable to "deliberate indifference." The expert defined deliberate indifference as a "[c]onscious knowledge of something and not doing anything about it." 25 F.3d at n.12. The Sixth Circuit concluded that the district court erred by admitting such testimony: "'deliberate indifference' is a legal term. . . . It is the responsibility of the court, not testifying witnesses, to define legal terms. The expert's testimony in this regard invaded the province of the court." *Id.* at 1353.

The Sixth Circuit cited its *Berry* decision in *Woods v. Lecureux*, 110 F.3d 1215 (6th Cir. 1997). In *Woods*, the mother of a murdered inmate sued the prison warden and deputy warden, alleging a violation of the inmate's Eighth Amendment rights in failing to prevent his murder. The plaintiff sought to introduce expert testimony that the wardens were "deliberately indifferent." 110 F.3d at 1219. The district court excluded that proposed testimony, and the plaintiff appealed. On appeal, the Sixth Circuit affirmed the district court, noting that "*Berry* teaches that a district court abuses its discretion when it allows a witness to define legal terms, especially terms that carry a considerable amount of legal baggage." *Id.* at 1220. The appellate court determined that the district court had not abused its discretion in excluding the proposed testimony:

> Testimony . . . which attempts to tell the jury what result to reach and which runs the risk of interfering with a district court's jury instructions hardly can be viewed as being helpful to the jury. Moreover . . . whether a prison official acted with deliberate indifference depends on that official's state of mind. Thus, by expressing the opinion that [the warden] was deliberately indifferent, [the expert] gives the false impression that he knows the answer to this inquiry, which depends on [the warden's] mental state. For a witness to stack inference upon inference and then state an opinion regarding the ultimate issue is even more likely to be unhelpful to the trier of fact. . . . We thus believe that the district

court did not abuse its discretion by excluding [the expert's] testimony on "deliberate indifference."

*Woods*, 110 F.3d at 1221.[1]

Other courts have similarly excluded proposed expert testimony regarding whether a defendant's conduct was deliberately indifferent in the § 1983 context. *Al-Turki v. Robinson*, 10-cv-2404-WJM-CBS, 2013 WL 603109, *5 (D. Colo. Feb. 15, 2013) (precluding expert physician from providing testimony that defendant was "deliberately indifferent" to the plaintiff's medical needs, because the physician would either be opining on the ultimate legal issue, invading the province of the jury or would be opining on the defendant's knowledge and intent, which is outside the scope of expertise); *Sellers v. Butler*, 02-3055-DJW, 2006 WL 2714274 (D. Kan. Sept. 22, 2006) (applying *Specht* and excluding an expert's "anticipated testimony that he does not believe anyone who treated Plaintiff was 'deliberately indifferent' to his medical needs or care," because "the concept of 'deliberate indifference' is an ultimate issue in this case" and "is a legal conclusion . . . . If allowed to give this testimony at trial, [the expert] would be effectively

---

[1] In *United States v. Wood*, 207 F.3d 1222 (2000), the Tenth Circuit cited its decision in *Specht,* as well as the Sixth Circuit's determination in *Woods*, for the following proposition:

> **This Circuit also prohibits experts from testifying as to ultimate issues of law in civil cases**. *See Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988). Other circuits applying the same rule have excluded testimony in civil cases similar to that of Dr. Baden. *See Woods v. Lecureux*, 110 F.3d 1215, 1219-20 (6th Cir. 1997) (holding an expert could not testify that the defendant acted with deliberate indifference because that mental state was an element of the alleged statutory violation); *Hygh v. Jacobs*, 961 F.2d 359, 363-64 (2d Cir. 1992) (holding an expert improperly testified to a legal conclusion when he described the defendant's actions as unjustified under the circumstances, unwarranted, and totally improper.

207 F.3d at n.10 (bold added). Other circuit courts have similarly cited *Woods* in determining that expert testimony that states an ultimate legal conclusion is typically excluded as not helpful to the jury. *See, e.g., United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002); *West v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997).

instructing the jury how to decide plaintiff's section 1983 claim."); *Moriarty v. Board of County Comm'rs for County of Sandoval*, 931 F. Supp. 2d 1142, 1162-63 (D.N.M. 2013) (excluding expert opinions regarding "deliberate disregard" because such opinions did not reliably apply accepted methods to the facts but "simply speculate or provide legal conclusions" and "comprise nothing if not legal conclusions").

In *Bruner-McMahon*, 10-CV-1064-KHV, 2012 WL 33837 (D. Kan. Jan. 6, 2012) the court concluded that testimony from a corrections expert regarding deliberate indifference would improperly invade the province of the court to instruct the jury on the meaning of that legal term. The court found such an opinion from a corrections expert would be unhelpful to the jury:

> The Court, not an expert witness, provides legal definitions for the trier of fact. In a case that alleges deliberate indifference, expert testimony that someone deliberately did something or deliberately failed to do something creates a likely risk of confusing the jury. For these reasons, the opinions regarding deliberateness are not helpful. . . . A helpful opinion from a corrections expert . . . would avoid legal labels that describe mental attitude and intellectual understanding. A helpful expert opinion would not state that someone was "indifferent", "deliberately indifferent", "deliberately ignoring", or "disregarding" a medical condition. It would instead provide relevant testimony about standards and accepted practices for jail employees to follow, when confronted by a recognized medical need. A helpful opinion would show what specific acts should be taken or avoided by jail personnel in a given circumstance.

2012 WL 33837 at \*\*6-7. Like the corrections expert in *Bruner-McMahon*, Mr. Fisher does not provide helpful opinions of the type described in that case. He has not described *any* particular jail standards or identified what specific actions are in the norm of acceptable practices for jail personnel confronted with an inmate in need of medical care. Rather, he merely recites a chronology from the Jail medical records, then announces, *ipse dixit*, that Jail and medical staff acted appropriately, without explaining how he reached that conclusion.

IT IS THEREFORE ORDERED that plaintiff's Motion in Limine to Preclude Expert Testimony of [defendant's expert] witness, Charles G. Fisher" (Doc. 190) is **granted**.

10

SO ORDERED this 10th day of March, 2014.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

11