IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

CAROLYN COX,                            )
                                        )
            Plaintiff,                  )
                                        )        Case No. 11-CV-457-JED-FHM
v.                                      )
                                        )
STANLEY GLANZ,                          )
                                        )
            Defendant.                  )

## OPINION AND ORDER

Before the Court is defendant Stanley Glanz's Motion in Limine (Doc. 197), which adopts the Motions in Limine filed by the settled defendants (Doc. 195). Plaintiff responded (Doc. 225, adopting Doc. 227). The settled defendants filed a Reply (Doc. 246), although it does not appear that Glanz adopted the Reply. The Court has previously summarized the factual background of this case in prior orders. (*See* Doc. 321).

### Introduction

The Motions in Limine (Doc. 195) adopted by Sheriff Glanz include 24 separate categories of evidence as to which the defendant seeks a pretrial ruling of exclusion. Most of those requests are generic, overly broad, and are not supported by either reference to specific evidence or to any authorities beyond evidence rules. "The purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008) *aff'd*, 402 F. App'x 337 (10th Cir. 2010) (internal quotations omitted). While pretrial limine rulings can save time and avoid interruptions at trial, "a court is almost always better situated during actual trial to assess the value and utility of evidence." *Id.* (citation

omitted). For this reason, some courts defer making in limine rulings unless the "evidence is clearly inadmissible on all potential grounds." *Hawthorne Partners v. AT & T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) ("Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.").

Most of the issues raised in the Motion in Limine do not warrant in limine rulings at this time and will instead be addressed at trial if and when they arise.  Thus, the Court will deny those requests without prejudice to consideration of objections to specific evidentiary issues that may arise in the course of trial.  Of course, a party who anticipates that a specific, out of the ordinary evidentiary issue is going to be presented with respect to a particular witness should raise that issue in advance of that witness's testimony, outside the presence of the jury, and should be prepared to present specific legal arguments in support of its position.

### The Motions in Limine

1. *Reference to Motions in Limine*

Glanz seeks to exclude any reference to the filing of motions in limine and any rulings by the Court on such motions.  Plaintiff responds that she does not intend to offer any such evidence at trial.  Defendant's request is **denied as moot**.

2. *Insurance Coverage*

Defendant requests to exclude any reference to insurers, including any "use of the words 'adjuster', 'claim', 'agent', or any investigation of the events of this case by the insurer and any reference to any healthcare provider called as an expert witness on behalf of any party making reference to insurance."  This request is overbroad.  In any event, plaintiff responds that she "does not intend to offer any evidence of liability insurance," but "reserves the right to use the

words [quoted in the Motion in Limine] in a context outside of liability insurance coverage." Defendant's request is **denied as moot**.

### 3.    CHC or Jail Policies and Procedures

Sheriff Glanz requests that the Court enter an order prohibiting any witness, party or attorney from stating in front of the jury that any CHC or Jail policy or procedure was violated. The Motion in Limine does not cite any particular deposition testimony or other specific evidence which Glanz seeks to exclude.  Plaintiff objects and notes that Jail policies and procedures are at the very center of plaintiff's municipal liability claim.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).  The Court agrees, and the request in the Motion in Limine is extremely overbroad.  The request to exclude references to violations of policies and procedures is **denied**.

### 4.    Lay Witnesses Testifying as Experts

Glanz argues that "[m]ere lay witnesses should not be permitted" to "give opinions on any medical, nursing, or mental health issues, such as standards of care, a description of the exact injury, causation of the injury, and a medical or nursing diagnosis, etc."  Again, defendant's request is not made as to any particular witness, deposition testimony, or affidavit, but is instead generic and very broad.  Witnesses can provide lay opinions that are "rationally based on the witness's perception," "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 [which govern expert opinions]."  Fed. R. Evid. 701.

Both plaintiff and defendant have endorsed certain Jail nurses to testify in this case.  For example, plaintiff has listed nurses Faye Taylor, Robin Mason, and Tammy Harrington to testify regarding "[p]olicies, procedures, and practices of Defendants; systemic failures alleged and

notice thereof; [and] facts and circumstances relevant to allegations made in this lawsuit." (Doc. 283). Sheriff Glanz has listed staff nurses Sara Jeffries, Faye Taylor, and Sara Sampson to testify regarding their "[k]nowledge of [Mr. Jernegan's] medical and mental health condition and treatment while incarcerated at the Tulsa County Jail." (Doc. 298). These nurses appear to be fact witnesses whom the parties expect to testify regarding their knowledge and perceptions relating to Mr. Jernegan and/or the actual policies and practices with respect to medical and mental health treatment at the Jail. It is unclear to the Court that any of the nurses' testimony would constitute opinions that are based upon "scientific, technical, or other specialized knowledge within the scope of Rule 702," such that they would have to have been endorsed as expert witnesses. *See* Fed. R. Civ. P. 701; *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004) (a lay witness may testify as to opinions "only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person"). Accordingly, defendant's request is **denied**.

5.   *Testimony Regarding a Conspiracy or Code of Silence*

Sheriff Glanz requests that the Court prohibit plaintiff "from making any reference to any alleged conspiracy/code of silence among healthcare providers, law enforcement officers, or correctional officers." Plaintiff objects and asserts that such evidence is relevant to the question of deliberate indifference and is admissible at trial. Specifically, plaintiff asserts that there is evidence that one nurse was instructed not to report misconduct, another nurse witnessed falsification of medical reports, and other witnesses may provide similar testimony. The Court is also generally aware of the summary judgment evidence submitted by plaintiff, which included allegations that the defendant participated in a meeting at which staff were instructed to hide problem medical records from auditors as well as allegations of a nurse who reported witnessing

4

a mental health team meeting -- following the discovery of Mr. Jernegan hanging in his cell -- at which (according to that nurse) the team members were discussing making their stories "consistent." To the extent such evidence is otherwise admissible under the Federal Rules of Evidence, the Court is disinclined to enter a pretrial order finding that evidence inadmissible only because it relates to conspiracy-type allegations. The defendant's request to exclude such evidence is **denied without prejudice** should a specific issue arise relating to this issue at trial.

>   6.      *Reference to Attorney Deposition Instructions or Objections*

In another very general request, defendant asks that the Court exclude all evidence regarding meetings between attorneys and witnesses and objections made during depositions, "including any side bars or comments by the attorneys present during the deposition." The Court agrees with the proposition that discussions between a witness and the witness's counsel are generally privileged. However, plaintiff responds that certain witnesses may have had meetings with attorneys for defendant (not the witness's own attorney) at which the witnesses were coached or instructed as to their testimony and that such meetings may be relevant. Defendant has not pointed to any specific evidence or deposition conferences, side bars, or meetings that are inadmissible, nor has defendant offered any authority on point. The request is thus **denied**.

>   7.      *Discovery Issues and Rulings*

Again, defendant requests a general prohibition of any reference to discovery, without identifying any specific evidence or providing any analysis. This request is **denied**.

>   8.      *References to Settlement Offers or Negotiation Discussions*

The defendant requests that the Court prohibit references to offers of settlement or compromise, which should be excluded under Fed. R. Evid. 408. This is essentially a general request that the Court rule in advance of trial that plaintiff should follow the Federal Rules of

Evidence.  The Court of course expects every party to follow the rules, but a pretrial limine ruling is not necessary to that effect.  As a result, this request is **denied**.

> 9.      *Unrelated or Other Cases Against Defendants*

Without any analysis or reference to specific evidence, defendant asserts that any evidence relating to claims by other Jail inmates or employees would be irrelevant and barred under Fed. R. Evid. 401 and 404(b), or that such evidence would be more prejudicial than probative and thus excludable under Fed. R. Evid. 403.[1]  Plaintiff responds that evidence of incidents both before and after Mr. Jernegan's death is relevant to establishing the existence of a municipal policy or custom.  The Court agrees that incidents before Mr. Jernegan's incarceration and death may be relevant both to reflect the existence of a municipal policy or custom and to provide evidence of notice to the defendant of practices at the Jail that put inmates like Mr. Jernegan at serious risk of harm.  In addition, incidents after Mr. Jernegan's death may be relevant to reflect defendant's disposition or the policies and practices that existed at the time of Mr. Jernegan's incarceration at the Jail, although such post-incident evidence may not be used to establish causation.  (*See* the Court's analysis of this issue in Doc. 321 at 19-23).  Without

---

[1]      Defendant proposes a very narrow construction of the evidence that he claims would be "relevant" in this case.  Under that construction, unless evidence directly shows that Jail personnel knew that Mr. Jernegan was at imminent risk of suicide, such evidence is irrelevant. The Court has previously rejected that reading of the standards applicable to Mr. Jernegan's § 1983 claims, in its Opinion and Order denying summary judgment.  (*See* Doc. 321 at 29-30).  In short, an "official's knowledge of the risk need not be knowledge of a substantial risk to a *particular* inmate, or knowledge of the particular manner in which injury might occur." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (emphasis in original); *see also Layton v. Board of County Comm'rs of Okla. County*, 512 Fed. App'x 861 (10th Cir. Mar. 12, 2013); *duBois v. Payne County Bd. of County Comm'rs*, No. 13-6144, 2013 WL 5952148, **4-5 (10th Cir. Nov. 8, 2013).  "It does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk . . . for reasons personal to him or because all prisoners in his situation face such a risk." *Tafoya*, 516 F.3d at 916.  "[A] jury is permitted to infer that a prison official had actual knowledge of the constitutionally infirm condition based solely on circumstantial evidence, such as the obviousness of the condition." *Tafoya*, 516 F.3d at 916.

defendant identifying or providing any analysis as to any specific evidence that it claims to be excludable, it is impossible for the Court to issue a pretrial ruling either excluding or permitting every possible category of evidence of other claims or incidents.  This request is therefore **denied without prejudice**.

10.     *References to Improper Standards of Care and/or Causation*

Defendant asks that the Court exclude "[a]ny reference to standards such as 'possibilities' or 'it might have been' for causation or standards of care," and rule that all references by plaintiff's attorneys or witnesses be in terms of "reasonable medical certainty."  Once again, defendant's request is generic, without any reference to or analysis of specific evidence. The request is **denied**.

11.     *Introduction of Materials Under Fed. R. Evid. 803(18)*

Defendant requests that the Court enter an order, prospectively, that any medical literature, if used, may only be read into evidence and not received as exhibits.  As with request number 8, this is essentially asking for a pretrial limine ruling that the parties (and the Court) will follow Fed. R. Evid. 803(18) in offering or admitting evidence.  Such a pretrial ruling is unnecessary, as the Court expects that the parties will follow the rules and will advise the Court at the proper time of rules which a party believes to apply to admission of specific evidence. This request is thus **denied**.

12.     *Notice of Witnesses to Appear at Trial*

The parties have filed their pretrial disclosures of witnesses they expect to call at the trial. If a party requests at a pretrial conference, the Court ordinarily addresses any further notice issues during the pretrial conference after permitting all parties to present their positions.  This request is thus **denied at this time**.

13.    *NCCHC, ICE, DOJ, ACA, and FBI Audits or Reports*

Defendant asserts that audits, reports, correspondence and action plans to and from the referenced entities should be excluded because they do not specifically relate to Mr. Jernegan. With respect to documents predating Mr. Jernegan's incarceration and death, such documents may be relevant to whether defendant had knowledge of problems with the medical practices at the Jail. For example, documents relating to the 2007 NCCHC audit of the Jail's medical system may be relevant to the issue of whether defendant was on notice of a deficient system of medical / mental health care and whether he reacted to or changed any practices at the Jail following such notice may be relevant to the deliberate indifference analysis or the existence of allegedly unconstitutional practices at the Jail. Documents generated after Jernegan's death may be relevant to defendant's disposition or to the existence of a policy or custom at the time of his death. (*See* Doc. 321 at 19-23).

Defendant also asserts that the reports are themselves hearsay, and plaintiff responds that such reports are not hearsay because they would be offered to show that defendant was on notice of a deficient medical system. That analysis by plaintiff would seemingly only apply to reports that were generated and provided to defendant before Mr. Jernegan's death, as the notice that defendant had at the time of Mr. Jernegan's death (not after) is relevant. Plaintiff has also identified a number of hearsay exceptions which she asserts would render the documents admissible, and defendant did not respond specifically to those legal arguments. At this time, without knowing which witnesses would be sponsoring which documents and more specifics of which parts of the reports plaintiff may seek to utilize with a witness, the Court is unable to craft a ruling as to which parts (if any) of which reports should be admitted or excluded at trial, and will therefore **reserve ruling until trial**. With respect to defendant's argument that parts of

reports would release private inmate medical information, to the extent such portions of reports are determined to be otherwise admissible, the Court can envision that names and personal identifiers could be redacted from the version of any such exhibits published to the jury.

      *14.*    *Documents, Review, AMS Reports and Testimony of Dr. Howard Roemer*

Defendant argues that the Court should exclude Dr. Roemer from testifying and should exclude evidence relating to reports of his audits relating to health care at the Jail, because Dr. Roemer did not review Mr. Jernegan's care while at the Jail.  As noted by plaintiff in response, Dr. Roemer's report does, in fact, include a summary with respect to Roemer's review of Mr. Jernegan's care at the Jail.  The Court accordingly rejects defendant's argument that the report or Roemer's testimony could have no relevance to Mr. Jernegan's death.  Plaintiff also argues that such evidence regarding other inmates may be relevant to the issue of defendant's disposition, that changes were not made even after notice of deficiencies in health care resulting in inmate deaths, and that "no remedial action had been taken" by defendant despite such notice.  At this point, the Court is not inclined to enter a broad order excluding Dr. Roemer from testifying or excluding the AMS report in its entirety, because at least one portion of that report relates directly to Dr. Roemer's findings with respect to the care of Mr. Jernegan.  However, it does appear that admission of the entire report could be more prejudicial than probative.  At this time, the Court does not have enough information about what parts of the report, if any, the plaintiff intends to propose would be admitted.  Thus, the Court **reserves ruling** on this request at this time.  The parties should be prepared to discuss this issue at the pretrial conference.

      *15.*    *Oklahoma Department of Health Survey and Report*

Defendant requests that the Court exclude reports and notices of the Oklahoma State Department of Health (OSDH).  The Court has previously provided legal analysis relating to the

admission of such evidence in its Opinion and Order on summary judgment. (*See* Doc. 321 at 11-13). To the extent that those documents are presented / sponsored appropriately through a witness, the Court is not inclined to exclude the report and notice in its entirety, but will **reserve ruling** for any specific objections which may be raised at trial to the admission of portions of the documents.

16.    *Mortality Review*

Defendant requests that the Court exclude all "mortality reviews" of Mr. Jernegan's death. The Court is unclear as to what documents make up the mortality reviews, and it does not appear that the parties have supplied them. To the extent that the mortality reviews consist of documents that are the same as the OSDH documents or the AMS / Roemer documents, see the discussion above. Otherwise, the Court will **reserve ruling** until it is provided the document(s) and has a better understanding of how they would be offered and used at trial.

17.    *Testimony Regarding Rumors and Hearsay*

Defendant's request relating to unspecified witnesses who have purportedly testified based solely upon rumor or "utter hearsay" is denied. Without more specificity, the Court is unable to enter a broad limine ruling excluding or limiting witness testimony in advance of trial, and the request is thus **denied at this time**.[2]

18.    *Criminal Action against CHMO Healthcare Providers*

Defendant anticipates that plaintiff may seek to introduce evidence regarding CHMO nurses' criminal convictions, but does not specify which witnesses or convictions are at issue.

---

[2]    The Court previously struck a statement in an affidavit which was apparently based solely upon rumor rather than direct observation or personal knowledge (*see* Doc. 318 at 4), and would caution the parties that the Court expects that the parties will not attempt to present testimony of any fact witness where such testimony is not based upon the witness's personal knowledge. *See* Fed. R. Evid. 602 (fact witness may testify to a matter only if evidence sufficiently supports a finding that the witness has personal knowledge of the matter).

Plaintiff notes that defendant does not offer any particular argument or example and notes that such evidence may be relevant or may be impeachment.  The request is **denied**.  The Court will rule on any specific objections which may arise at trial.

19.     *Employment Records of CHMO Healthcare Providers*

Defendant asserts that documents or evidence from employment files of nurses who worked at the Jail are irrelevant or, in the alternative, are more prejudicial than probative and such evidence should be excluded.  Without more information as to particular evidence, the Court is unable to determine whether any such evidence is relevant or prejudicial.  Plaintiff argues that documents in employment files may demonstrate that Jail nurses "expressed concern about the medical care being provided to inmates," and the Court agrees that such evidence could be relevant to the jury's analysis of deliberate indifference and municipal liability.  This request is **denied**.

20.     *Criticisms Not Presented by Expert Testimony*

Defendant seeks to exclude the plaintiff from presenting evidence of any criticisms or claims that were not advanced by an expert witness.  There is no authority cited for that proposition.  This request appears similar to the argument made by defendant in request number 4.  As noted above, both plaintiff and defendant have endorsed certain Jail nurses to testify in this case, and their testimony, if based on personal observation, may be relevant and not improper opinion testimony.  In addition, plaintiff argues that criticisms set forth in numerous audits and reports are relevant to defendant's notice of the existence of a constitutionally defective medical / mental health system at the Jail.  The Court agrees that such evidence may be relevant.  Because defendant has not identified any specific evidence or provided any legal authority or analysis on this request, it will be **denied at this time**.

21.     *Testimony Regarding Lack or Weakness of Staffing*

Defendant argues that plaintiff may attempt to represent to the jury that the staffing at the Jail was lacking, weak or improperly trained.  Defendant asserts that such claim is unfounded and so the Court should enter a global pretrial ban on such arguments or evidence by plaintiff. As the Court is familiar with the summary judgment record in this case, plaintiff has submitted evidence that the Jail nurse who performed Mr. Jernegan's intake and assigned him to the general population testified that she is not trained in mental health and that she was unable or unwilling to indicate whether paranoid schizophrenia is a serious mental illness.  Nurse Robin Mason also provided an affidavit regarding significant staffing and training issues which she alleges rendered it impossible to timely respond to and evaluate mentally ill inmates.  The Court agrees with plaintiff that such evidence (if presented in a form otherwise admissible at trial) could be relevant to issues relating to inadequate training, improper staffing, notice to defendant of a constitutionally deficient system of medical / mental health care, and similar issues. Without any further analysis or specification of particular evidence by defendant, the Court is unable to enter a pretrial prohibition of such evidence.  The request is **denied at this time**, and the Court will rule on any particular objections at trial.

22.     *Prior Psychiatric / Mental Health History of Mr. Jernegan*

Defendant argues that the Court should exclude all evidence of Mr. Jernegan's mental health history because, according to defendant, plaintiff has not presented evidence that Mr. Jernegan was diagnosed mentally ill or on medications.  It is unclear what specific evidence defendant seeks to exclude, and defendant does not cite any legal authority to support his argument.  The Jail's own records include documentation of Mr. Jernegan's self-reports that he was a diagnosed paranoid schizophrenic, that he was hallucinating / seeing or hearing things, and

that he had been nervous or depressed, and nurse Faye Taylor testified regarding one or more of those records.  The Court will not enter a pretrial ruling to exclude those critical and relevant records from the trial (if otherwise relevant to a particular witness's testimony), nor will it enter a pretrial order broadly precluding plaintiff, who was Mr. Jernegan's mother, from testifying about mental health issues.  The request is **denied**.

23. *Employment History of Mr. Jernegan*

Defendant seeks an order excluding evidence that Mr. Jernegan was employed prior to his incarceration at the Jail in July 2009, because plaintiff has not provided documentation reflecting such employment.  Plaintiff responds that witnesses will testify regarding Mr. Jernegan's training and his income and that plaintiff's economic loss expert will utilize such data in his analysis.  Defendant has provided no analysis or legal authority in support of its argument.  To the extent that there is a lack of documentation or credibility relating to allegations of Mr. Jernegan's employment or income, defendant will have an opportunity to cross examine plaintiff's witnesses on this issue.  The request for pretrial limine ruling is **denied at this time**.

24. *Financial Support to Children*

Defendant asserts, without evidence or authority, that Mr. Jernegan had relinquished his parental rights to all three of his children and that, therefore, plaintiff should not be permitted to introduce evidence that he provided financial support for his children.  Plaintiff disputes defendant's argument and asserts that Jernegan was financially responsible for his children and was legally obligated to support them.  The Court does not have enough information to enter a pretrial limine ruling on this issue, and the issue seems better poised for cross examination at trial.  This request is **denied at this time**.

IT IS THEREFORE ORDERED that the defendant's Motion in Limine (Doc. 197) is **denied** at this time.

IT IS SO ORDERED this 10th day of March, 2014.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE